JOHN R. AHERN, Respondent, v. MARY E. BOYCE, Appellant.

St. Louis Court of Appeals, May 31, 1887.

1. CONTRACTS, BUILDING—AGENCY—SUPERVISING ARCHITECT, POWERS OF.—A supervising architect has no power to rescind a written building contract between the owner and the contractor, by the terms of which no such power is reserved to him, without proof *aliunde* of the existence of such power.

2. ———— ABANDONMENT OF—MEASURE OF DAMAGES.—The reasonable value of the work done is not the measure of the damages of a contractor who has wrongfully abandoned his contract.

3. EVIDENCE—MEMORANDUM TO REFRESH MEMORY.—A witness may use memoranda to refresh his memory, as to measurements of work done by him, although the measurements are made long after the completion of the work.

4. ———— AGENCY.—It is not error to exclude evidence of the acts of an alleged agent without first showing authority in him to do the acts.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Reversed and remanded.*

T. K. SKINKER, for the appellant: The court below

erred in permitting the plaintiff to testify from the paper prepared on the sixteenth of February, 1886. It was prepared for the special purpose of being used at the trial, and not in the ordinary course of business, and was, for this reason, not a proper paper to use for refreshing the witness' memory. 1 Phillips on Evid. *347, 352. It was prepared too long (nineteen months) after the work was finished, and, for this reason, it was not proper to use it. 1 Greenl. Evid., sect. 438; *Maxwell v. Wilkinson*, 113 U. S. 656; *Chaffee v. United States*, 16 Wall. 516, 541; *Halsey v. Sinsebaugh*, 15 N. Y. 485; *Russell v. Railroad*, 17 N. Y. 134, 139. To be admissible for the purpose of refreshing a witness' memory, a paper must have been prepared, "contemporaneously with the transaction." *Steinkeller v. Newton*, 9 Carr. & P. 313. Or, "near the time." *Jones v. Stroud*, 2 Carr. & P. 196. Or, "soon after the fact." *The People v. Cotta*, 48 Cal. 168. Or, "at or about the time." *Philbin v. Patrick*, 3 Abb. (N. Y.) 605. Or, "at the time." *Folsom v. Apple River Co.*, 41 Wis. 602; *Kelsea v. Fletcher*, 48 N. H. 282; *Haven v. Wendell*, 11 N. H. 112; *Cowles v. The State*, 50 Ala. 454; *McCausland v. Ralston*, 12 Nev. 195. Evidence of the superintendent's verbal order to the plaintiff to quit work was improperly admitted. *Ahern v. Boyce*, 19 Mo. App. 552. If he chose to accept a verbal order from Grable, dispensing with the execution of a portion of the work, he acted in his own wrong, and in violation of his contract with the defendant. *Brown v. Strimple*, 21 Mo. App. 338; *Hartupee v. Pittsburg*, 97 Pa. St. 107, 119; *Ford v. United States*, 17 Ct. of Claims, 50; *Stuart v. Cambridge*, 125 Mass. 102; *Trustees v. Platt*, 5 Brad. (Ill.) 567; *White v. Railroad*, 50 Cal. 417; *Myers v. Sarl*, 30 L. J. Q. B. 9; *Russell v. Sa Da Bandiera*, 32 L. J. C. P. 68. Where there is a written contract, accompanied by specifications, the superintending architect has no power to order a departure from them, even when not expressly restricted. *Flesh v. Christo-*

· *pher,* 11 Mo. App. 483, 491 : *Starkweather v. Goodman,* 48 Conn. 101. Where, in a case like this, the contract is wrongfully terminated by the defendant, the plaintiff may recover the reasonable value of his work without reference to the contract price ; but if the defendant is not in fault the contract price always governs. *Ahern v. Boyce,* 19 Mo. App. 552. It is "the standard of value." *Yeats v. Ballentine,* 56 Mo. 530, 534. The plaintiff's recovery can not exceed a proportionate part of the contract price. *Marsh v. Richards,* 29 Mo. 99, 105.

A. R. Taylor, for the respondent : If the termination of the contract was wrongful by the defendant, the measure of recovery would have been the reasonable value of his work, without regard to the contract price. *McCullough v. Baker,* 47 Mo. 401 ; *Ahern v. Boyce,* 19 Mo. App. 555. If wrongfully terminated by the plaintiff the measure would have been the actual value of the work done, not exceeding the contract price, less damages sustained by the defendant, through the breach of the contract. *Ahern v. Boyce,* 19 Mo. App. 555 ; *Yeats v. Ballentine,* 56 Mo. 530 ; *Eyermann v. Mt. Sinai Cemetery Ass'n,* 61 Mo. 400 ; *Davis v. Brown,* 67 Mo. 313. The case presented at bar is one lying intermediate between the case of a wrongful termination by one party, and the other a rightful termination by each. Hence the measure of recovery is the actual value of the work done within the contract price. Neither party is entitled to damages, as for a breach of contract. This view of the law is sustained directly by the supreme court. *Marsh v. Richards,* 29 Mo. 106.

Thompson, J., delivered the opinion of the court.

This case was before this court on a former appeal, and in our opinion then rendered the issues raised by the pleadings were stated, and the essential portions of the contract under which the work was done were quoted. *Ahern v. Boyce,* 19 Mo. App. 552. On the

trial, from which this appeal is taken, as on the former trial, the plaintiff testified that he went to work under the contract and continued at the work until about the twentieth of July, 1884, when Mr. Grable, the defendant's superintendent of the work, stopped him, by directing him not to proceed any further with the work. The defendant gave evidence tending to contradict this statement, but Mr. Grable testified that he did tell the plaintiff that if he did not push the work along, and get it done in time, he had better quit: "You had better finish up the work or quit. If you want to quit, I will pay you for what you have done." There was no evidence in the case that the superintendent had authority from the defendant to terminate the contract, or to direct the plaintiff to quit work thereunder, and the defendant testifies that she gave him no such authority. The contention of the plaintiff's counsel is, that such an authority is to be implied from the language of the contract, and the circuit court seems to have proceeded upon this view, but we look to the words of the contract in vain for any such authority. Under the language of the contract, the superintendent was at liberty to make deviations from the plan and specifications, without invalidating the contract. He also had authority to agree, *in writing*, for extra work, but in case of any failure so to agree, the work was, by the terms of the contract, "to be completed on the original plan." The terms of the contract, taken together, show that it was intended that the superintendent should have ample authority to supervise the *execution* of the contract. Experience in the execution of such contracts has, no doubt, shown that unforeseen exigencies may arise, which will render it necessary or desirable to make deviations, more or less material, from the plans and specifications, as originally settled. The power to do this must necessarily be entrusted to the discretion of some one, and these contracts are generally so framed as to entrust it to the

discretion of the superintending architect, who, by reason of his experience and skill, is best capable of exercising such a discretion; and accordingly, in this contract, the owner had made the superintendent her agent for this purpose. But it nowhere appears that she made him her agent for the purpose of rescinding or terminating the contract entirely.

I. After the decision of this court had been rendered in the former appeal, pointing out that the plaintiff had failed to introduce any evidence whatever, of the reasonable value of the work done by him, except in the negative form of showing the reasonable value of the work left undone and of the extra work, which manner of showing the reasonable value of the work done this court held to be inadmissible, the plaintiff set about to prepare himself to give evidence of the reasonable value of the items of work which had been done. With this end in view he went, on the sixteenth day of February, 1886, and inspected the premises, and from such inspection prepared a memorandum of the items of work done, and of the values of the various items, which memorandum he was allowed to use on the trial, when testifying as a witness, for the purpose of refreshing his memory. On his cross-examination, he testified at length and with considerable minuteness of detail, from memory, as to these items and their value. The ruling of the court, in allowing him to use this memorandum, is assigned for error, on the ground that the memorandum was not made contemporaneously with the fact or facts, concerning which the witness needed to have his memory refreshed, and, also, on the ground that his memory did not need refreshing at all. The assignment includes an objection to the ruling of the court in excluding an instruction tendered by the defendant, to the effect that the jury should disregard the memorandum. We are of opinion that the learned judge committed no error in these rulings. The principle that a witness can not be allowed to use a memorandum to refresh his memory

concerning a past event, unless the memorandum was made at, or near, the time of the event, is a familiar rule of evidence, supported by many adjudged cases cited by the learned counsel for the defendant, and by many others which could be cited; but it obviously has no application to a case of this kind. The memorandum was made to refresh the witness' memory concerning the results of an inspection of the work which he had done, which work, it clearly appears, embraced so many items, that no witness could be expected to carry them all for a considerable length of time in his unaided memory. If the witness had the right to testify from the results of his inspection (and it is not contended that he had not), then a just application of the rule would give him the right to use, for the purpose of refreshing his memory, a memorandum of the results of his inspection, made at the time of the inspection. The memorandum was not used to refresh the memory of the witness as to a transaction or other event which took place while the execution of the contract was in progress, but as to what appeared upon a subsequent inspection of the work, the same remaining substantially unchanged since it had been done, and itself speaking and furnishing the best evidence of what had, in fact, been done. To illustrate the distinction: If, for instance, the witness had desired to use a memorandum to refresh his recollection of something that had transpired pending the execution of the contract, which retarded its execution and excused his delay in executing it, he would not be allowed the use of a memorandum made sixteen months afterwards. But he attempted no such use of this memorandum, and the rulings of the court in respect of it were clearly correct.

It does not conclusively appear, as argued in behalf of the defendant, that the cross-examination of the witness showed that he did not need the use of the memorandum to refresh his memory; and, if it did, we do not understand upon what ground we could hold that the

use of it ( it being otherwise competent ) was prejudicial
to the defendant. If he was able to testify minutely to
the facts contained in the memorandum, it can scarcely
be doubted, when the multitude of these facts is consid-
ered, that he had prepared himself to do this by perusing
or rehearsing the memorandum, in the possible expecta-
tion that he might not be allowed the use of the paper
itself upon the witness stand.

II. We agree with the position of the defendant's
counsel that the trial court erred in permitting the plain-
tiff to give evidence that Grable, the superintendent,
verbally ordered the plaintiff to quit work. But we do
not so hold, merely because the order was verbal. We
place our ruling on the ground that it had not been
shown, as a foundation for the admission of such evi-
dence, that Grable had the authority to give such an
order, and that such authority was not subsequently
shown. As stated before, we find no such authority
in the terms of the contract; but if those terms could
be construed as conferring such an authority, we should
be inclined to agree with the contention of counsel that
it would have been necessary for Grable to give the order
*in writing;* since, by the terms of the contract, the
superintendent had no power to make any deviations
therefrom, unless the cost and expense thereof should be
agreed upon, in writing.

III. As there was no evidence tending to show that
the contract was wrongfully terminated by the defend-
ant, the position of her counsel is undoubtedly correct,
that the court erred in permitting the witnesses, Lane
and McCarthy, to give testimony as to the reasonable
value of the work done, their estimates having been made
without reference to the contract price of the whole
work. This conclusion follows from the ruling of this
court on the former appeal, that it is only where the
defendant wrongfully terminates the contract, that the
plaintiff can sue for the reasonable value of his work
without regard to the contract prices.

IV. For the same reasons it is apparent that the court erred in the instruction, given for the plaintiff, upon which the case was submitted to the jury, and in inserting in the defendant's third instruction the words, "and without being stopped by the superintending architect, Mr. Grable." These instructions, as submitted to the jury, put the cause to them upon the theory of the plaintiff's petition, which was, that the plaintiff had been wrongfully prevented by the defendant from completing the contract, and was, therefore, entitled to recover a *quantum meruit*, of which, as already stated, there was no evidence.

Special attention to other points made in the printed arguments would only involve us in a further repetition of what has already been said. The fundamental error of the trial court seems to have lain in interpreting the contract, as giving the superintendent, Grable, the power to order the plaintiff to discontinue the work under it. But, if such an authority could be found in the terms of the contract, it would not, as intimated in our opinion on the former appeal, at all follow that the order to quit was wrongful; for *non constat* but the superintendent may have had good reason for making the order. If, therefore, his power had been shown, it would have been a question for the jury whether it was wrongfully exercised as against the plaintiff ; but the court, in instructing the jury, assumed that it was wrongfully exercised, and that the plaintiff was, hence, entitled to recover a *quantum meruit*, without regard to the prices fixed by the terms of the contract. The printed argument of the plaintiff urges the view that, although the contract was terminated by the *mutual consent* of the parties, the plaintiff would have a right to disregard its terms and recover a reasonable value. But it is unnecessary to speculate whether this would be so, or not, in the light of recent decisions, since there was no evidence that it was so terminated.

With the concurrence of Rombauer, J., the judgment will be reversed and the cause remanded. Lewis, P. J., is absent. ¡,