STEPHEN DELLECELLA, Appellant, v. HARMONIE CLUB, Respondent.

St. Louis Court of Appeals, February 5, 1889.

1. **Evidence : USAGE : POWERS OF AGENT.** Evidence of usage in a particular business may be introduced for the purpose of showing the manner in which certain powers given to agents may be exercised by them. But it must first be shown that such powers were actually given to the agent, and usage is then admissible to show the proper method of their exercise. The word "caterer" does not indicate that the person so designated has authority to make purchases on the credit of his employer.

2. **Evidence: PROOF OF AGENCY.** Proof that a person assuming to to act as agent for another made a particular purchase for which that other agreed to pay, is not admissible to show a general authority from such other person to make purchases on his credit.

3. **Instructions: INDEPENDENT CONTRACTOR.** It appearing that one Liss was acting as caterer for the defendant under a contract which provided that Liss should have " all the profits and revenues which he may derive or receive from the sale of liquors, cigars and refreshments, and none other," and that he should serve the defendant's members " with good wholesome, proper viands, liquors, cigars and refreshments at such prices to be determined upon by the house committee "of the defendant, there was no error in instructing that Liss was an independent contractor of the catering department under the contract, and was not authorized under its conditions to bind the defendant as its agent, in the purchase of the goods in controversy.

*Appeal from the St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

AFFIRMED.

*J. W. Collins,* for the appellant.

The court erred in excluding from the jury proper and legal evidence offered by appellant. In refusing to admit the practices of Liss as caterer in purchasing

oysters and provisions for respondent, as its agent, and also in refusing to admit evidence of a custom by which caterers have, by their occupation, general authority to purchase provisions for the club or society which they cater for. These being circumstances from which agency may be presumed. Story on Ag., sec 77 ; *Hull v. Jones*, 69 Mo. 587. Under the circumstances good faith requires that the principal shall be bound by the acts of an agent whom he has placed in a position in which he could hold himself out as being competent to deal with an innocent party to the detriment and injury of the latter. *Barker v. Railway*, 91 Mo. 159 ; Story on Ag., sec. 127 and note. The court erred in giving instruction three to the jury for defendant, and in its construction therein of the written contract read in evidence by respondent. It was error to instruct that Liss, the caterer, was under said contract an independent contractor of the catering department of respondent. The second clause of the contract gives to Liss "the profits and revenues which he may derive or receive from the sale of liquors, cigars and refreshments and none other." Liquors, cigars and refreshments are synonymous and convertible terms. The word refreshments, being a general term and following the particular words liquors and cigars, is by the rule of construing contracts to be restricted to articles of like nature, and similar kind of liquors and cigars. Neither does the fourth clause of the contract justify the court's construction. Liss is to serve, not provide or furnish, viands, liquors, cigars and refreshments. But there is no provision in the contract by which he is to derive a profit or revenue from the viands which he is to serve. By clause two, he is to get a revenue and profit from the three things, liquors, cigars and refreshments, described in clause four and none other. Neither clause two nor four provides for a profit on viands. Clause two and clause four when construed together, still leave the instruction erroneous.

*Lathers v. Keogh,* 39 Hun. (N. Y.) 576 ; *Hawley v. Railway,* 17 Mich. 56 ; *Trans. Co. v. Moore,* 5 Mich. 386.

*Krum & Jonas,* for the respondent.

The testimony in this case presents no facts which would indicate that Jack Liss, as a caterer, furnishing food and drink to the members of the Harmonie Club, was the authorized agent of the club for the purpose of making purchases of goods in its name and binding it therefor. On the contrary, the testimony of the several witnesses examined for respondent and the written contract introduced in evidence clearly show, that Liss was an independent contractor operating in the Harmonie Club for remuneration to himself alone. The instruction of law asked by appellant at the close of the case was properly refused. The first part of the fourth paragraph of the contract is that "said Liss agrees faithfully to serve said club in his capacity as caterer." As such caterer he "agrees to serve the members of said club with good, wholesome, proper wines, liquors, cigars and refreshments, at such prices to be determined upon by the house committee of said club ; and agrees to keep the necessary help for proper service in the club house." Webster defines the word "serve" as used in this paragraph, "to supply with food," but the meaning of the word is fully defined in the contract itself. Paragraph two provides, "said Harmonie club hereby gives and releases to said Jack Liss all the profits and revenues which he may derive or receive from the sale of liquors, cigars and refreshments, and none other." It is thus made apparent that by construing the second and fourth paragraphs together "to serve" in the fourth paragraph is to "furnish and sell" to the members, "at such prices to be determined upon by the house committee." Liss is to keep the profits and the

revenues from his sales as caterer at least from the liquors, cigars and refreshments, and as the contract does not express in the second paragraph what becomes of the revenue and profits derived from the sale of the "viands" as expressed in the fourth paragraph, this omission is supplied by the testimony of the witnesses, Fraley, Singer and Glaser, who state that Liss received these moneys for himself and that the club derived nothing from these sales. The contract and the testimony of all the witnesses show conclusively and without contradiction that Liss was an independent contractor of the catering department of the respondent's club, and we submit that the instruction of law numbered three, asked by and given for respondent to the jury, was proper.

BIGGS, J., delivered the opinion of the court.

This suit was commenced before a justice of the peace in the city of St. Louis. There was a judgment for plaintiff before the justice, and defendant appealed. On a trial in the circuit court, before a jury, there was a verdict and judgment for defendant. Hence this appeal.

Plaintiff complains in this court of the exclusion of legal and competent testimony offered by him, and of the action of the court in giving and refusing instructions.

We will first dispose of the questions arising on the objections to testimony.

I. The plaintiff sued the defendant upon an account for game, poultry, vegetables and fancy groceries, amounting to $102.32, alleged to have been purchased by defendant of plaintiff. Plaintiff testified that he sold the goods to one Jack Liss, who was a caterer for the defendant, that Liss told him to charge the goods to defendant, and that defendant would pay

the bill at the end of the month. That Liss drove a wagon on which was painted his name as "Caterer of Harmonie Club." That the goods were delivered at the club house. That he did not ask any of the officers of the club if Liss had authority to buy the goods for defendant, because he did not think it was customary. On cross-examination, plaintiff admitted that in February, 1888, he had sold Liss another bill of goods, and that he had given him his individual check on a bank. That Liss had no money in the bank, and the check was not paid. That he then had Liss arrested, but the matter was adjusted by Liss paying the bill. On April 3, plaintiff saw the officers of the club about his account. They said defendant did not owe for the goods; that Liss had no authority to buy them on defendant's account, and that the club would not pay the bill, etc.

Plaintiff's counsel then offered to prove by his client, "that it was the general usage and custom of caterers of clubs and societies in the city of St. Louis to buy, for their club, meats, provisions and other food." This testimony was excluded on defendant's objection.

"Evidence of usage or custom in a particular business, is admissible, not for the purpose of enlarging the powers of an agent, but for the purpose of interpreting powers which are *actually* given. Thus an agent to sell may be shown to have authority to sell on *credit*, provided the usages of trade authorize it, but without such usage the power to sell would be construed to be limited to a sale for cash."

This same rule applies to a purchasing agent. Story Agency [9 Ed.] sec. 77.

Before any such testimony could have been admissible in the case at bar, there must have been some competent testimony tending to prove that Liss as the agent of defendant, had authority to make similar purchases for defendant.

At that stage. of the trial, the only testimony that had been introduced as to Liss' agency or connection with the defendant's business, was, that he was "Caterer for Harmonie Club." This had no tendency to prove that Liss had authority to buy anything for defendant.

A caterer is a "buyer," "purchaser" or "provider," of provisions. The word "caterer" does not indicate that the person named has the right to buy provisions as the agent of some third party. If there had been any testimony that Liss had authority to make like purchases, as the agent of defendant, then the right to buy on credit might have been shown by the general usage or custom of caterers. Because the right to buy does not necessarily involve the right to buy on credit.

We do not think the testimony was admissible.

Counsel for plaintiff asked his witness, George Milford, the following questions :

Q. "I will ask you if you sold any goods at any time to the Harmonie Club ?"

Q. "I will ask you if Jack Liss, as caterer of Harmonie Club, ever bought oysters of you for the club, and you charged them to the club, and you wrote to the president of the club (Moses Fraley), about your bill which he said he would see paid ?"

Objection was made by defendant's counsel to these questions and the objection was sustained.

In sustaining the objection to the latter question, the court informed counsel for the plaintiff, that the plaintiff was not precluded from showing any declaration or admission by Fraley or any other officer of the defendant corporation, having a tendency to establish the agency of Liss to buy goods for defendant. The counsel for plaintiff chose to stand on the question as propounded.

An agency may be inferred from circumstances, and need not be established by direct and positive testimony.

*Hull v. Jones*, 69 Mo. 587.    But we do not think it was error to exclude proof of a particular purchase from witness, by Liss, of goods on defendant's account. Such testimony would have led to the investigation of a collateral matter which was in no way connected with plaintiff's sale.    *State v. Earnest*, 70 Mo. 520.    Besides there was no foundation laid for the introduction of this testimony.    There was no testimony showing any authority in Liss to make the purchase from Milford. *Ahern v. Boyce*, 26 Mo. App. 558.    No agency is shown unless there is proof, either of an express appointment, a subsequent ratification of the act, or estoppel.    There was no testimony in the case at bar to prove either one of these facts.    Plaintiff stated that Liss was "Caterer of Harmonie Club."    That did not necessarily clothe him with authority to buy provisions for defendant, and was no evidence of that fact.    We are therefore of the opinion that the ruling of the trial court was right.

II.    The remaining question of which appellant complains, pertains to the instructions.    Defendant read in evidence a contract between Liss and defendant. The only portions of this contract which are necessary and material to a full understanding of the questions presented by the instructions are as follows:

"2.    Said Harmonie Club hereby gives and releases to said Jack Liss all the *profits and revenues* which he may derive or receive from the sale of *liquors, cigars* and *refreshments and none other*."

"4.    Said Liss agrees faithfully to serve said club in his capacity as caterer for six months, and agrees to serve the members of said club with *good, wholesome, proper viands, liquors, cigars* and *refreshments*, at such *prices* to be *determined* upon by the *house committee* of said *club*, and agrees to keep the necessary help for proper service in the club house."

"5. The Harmonie Club agrees to furnish said Liss the quarters now in use by him as a home in the club house, fuel and light free of charge, together with the sum of eighty-three and $\frac{33}{100}$ dollars per month during the existence of this contract." The italics are our own.

Several of defendant's officers, without any objection being offered, testified in effect, that Liss had no authority to buy provisions or goods on defendant's account. That Liss was to keep the club house in proper order, furnish help and serve the members of the club with eatables, etc. That the club had nothing to do with Liss' purchases. That they had no notice that Liss was holding himself out as the agent of defendant, with authority to make purchases on its account.

The plaintiff asked the court to instruct the jury as follows, this the court refused to do :

The court instructs the jury that if they find from the evidence that the defendant is a club organized for social purposes and that it has meals, eatables and refreshments served for its members at the club house, in the city of St. Louis, Missouri, in the preparation of which it is necessary to have and use provisions, vegetables, game and articles of food, and if the jury further find from the evidence that the defendant employed at a salary, as its caterer or agent, one Jack Liss, who, by reason of the terms of his employment, resided in and had charge of said club house, and of the taking care thereof subject to the direction of its board of directors and officers, and if the jury further find that the defendant or its officers gave to said Liss either or apparent general authority to buy and purchase for it the provisions, vegetables, meat and articles of food used in said club house by the members of said club, or if it held said Liss out, or permitted him to hold himself out,

as its agent to the plaintiff Dellecella, or the public as having such an apparent general authority or power to purchase, and buy for it such provisions, vegetables, game and articles of food, and transact its business in that department or line for it. Then if the jury find from the evidence that the plaintiff was led to believe from the acts of said Liss and of defendant that said Liss had such general authority and power to purchase such provisions, vegetables, game and articles of food for defendant as its agent, and that the plaintiff acting on such a belief sold the provisions, game and articles of food, described in his account and statement in this case set forth and described to the defendant, and that the same was purchased as the agent for it of plaintiff, and that the same was delivered by plaintiff at the club house of defendant then the plaintiff will be entitled to recover of the defendant the reasonable value of such provisions, game and articles of food so sold and delivered, with interest at the rate of six per cent. per annum from the time when the jury find plaintiff demanded payment of the same of defendant.

The defendant on its part requested the court to give the jury, among others, the following instruction:

The jury are further instructed that if they believe from the evidence that Jack Liss was acting in the Harmonie Club as its caterer under the written contract introduced in evidence, and a renewal of said contract orally, then they are instructed that said Liss was an independent contractor of the catering department of said club under said contract, and was not authorized under its conditions to bind said club as its agent in the purchase of the goods in controversy.

Which instruction the court gave to the jury, to the giving of which plaintiff duly excepted.

By this instruction, the court told the jury that if Liss was acting under the written contract, then he was an independent contractor of the catering department

of said club, and was not authorized under the contract to bind defendant in the purchase of plaintiff's goods.

The evidence in the case leaves no doubt of the fact, that all of Liss' authority was derived from the contract, and there was no evidence tending to prove that the officers of defendant held Liss out as authorized to buy on defendant's credit.

Hence the only question, necessary for this court to decide, is whether the trial court was right in the construction of the contract.

The construction of this contract is not free from difficulty. The law is well settled that where there is no ambiguity in the language or terms of a written instrument, then extrinsic evidence is inadmissible to explain or vary it. But if the contrary appears, then evidence of the conduct of the parties, as to the interpretation put on the instrument by them, becomes admissible. Appellant claims, "that by the terms of the second paragraph of the contract, Liss was to receive the *profits only* from the sale of *liquors*, *cigars* and *refreshments* and *none other*. That the *profits* arising from the sale of *viands*, mentioned in the fourth paragraph, belongs to *defendant*, and that there was no provision in the contract requiring Liss to *provide food*." etc.

If *defendant* was to *furnish the provisions*, and *pay* for them, why should the defendant contract with Liss that they "should be of good quality," etc.? And why should the prices to be paid for *viands* by the *members of the club*, be determined by the house committee of said club?

If the members of the club were running an eating house on their own account, and Liss was merely a servant whose only duty it was "to perform the domestic duty of attending on the table" (as contended by plaintiff's counsel), then why should defendant in its contract

with Liss stipulate that the price of *viands to its own members* should be determined and regulated by the house committee of the club? What interest did Liss have in *that part* of the business if he was not to receive the profits arising from it? If the construction contended for by plaintiff is to prevail, then we will have to entirely discard that part of paragraph four reserving the right to fix prices to be charged members for eatables or treat it as having no meaning.

The officers of defendant testified without objection that Liss was to buy the *provisions* and receive the *profits arising* from the *sale* of *viands*. This testimony entirely negatives the idea that the parties to the contract put a different interpretation upon it from the one *plainly indicated* by its *terms*.

Under our view of this contract, the court did right in refusing plaintiff's instruction, and in giving the instruction asked by defendant.

With the concurrence of the other judges, the judgment will be affirmed.