## JOHN McCORD ET AL.
## v.
## WILLIAM O. MANSON.

1. EVIDENCE—PRINCIPAL AND AGENT.—Where an agent from time to time renders to his principal reports and statements of the business of the agency and of the accounts between himself and his principal growing out of it, and such reports and statements are received and retained by the principal without objection, such facts are *prima facie* evidence of an implied admission on the part of the principal of their correctness.

2. SAME.—Among merchants, an account rendered and not objected to within a reasonable time, becomes an account settled, and is conclusive between the parties, unless some fraud, mistake, omission or inaccuracy is shown.

ERROR to the Superior Court of Cook county; the Hon SIDNEY SMITH, Judge, presiding. Opinion filed October 29 1885.

Messrs. BISBEE, AHRENS & DECKER, for plaintiffs in error.

Mr. FRANK BAKER, for defendant in error.

BAILEY, P. J. This was an action of assumpsit for money had and received, brought by William O. Manson against John C. McCord and Joseph T. McCord, to recover certain moneys deposited by the plaintiff with the defendants, to be used by them as margins upon a series of contracts entered into by them on his account, for the purchase and sale of grain on the open Board of Trade of Chicago. These transactions, as it appears, commenced on the 24th day of November, 1882, and continued until the 30th day of November, 1883, and during that time the defendants made, or claim to have made, a large number of contracts on the plaintiff's account, involving the sale and purchase of nearly two million bushels of grain. The defendants during all that time resided in Chicago, and were engaged in dealing as brokers on said Board of Trade, while the plaintiff resided at Waverly, Illinois. The moneys in

McCord v. Manson.

question were furnished by the plaintiff to the defendants from time to time, in different sums, as demanded by the defendants during the course of the transactions, the aggregate amount so furnished being $36,500.

It seems to have been the uniform practice of the defendants, on making a contract of purchase or sale for the plaintiff's account, to immediately report to him the commodity purchased or sold and the number of bushels and price, and also, whenever they closed out a previous contract for the purchase or sale of grain for future delivery, by a corresponding contract for the sale or purchase of the same amount of grain for a like delivery, to at once forward to him a statement of account, showing the amount purchased and sold, the contract prices, the commissions charged by them, and the balance of profit or loss resulting from the transaction. From time to time, also, the defendants transmitted to the plaintiff full statements of their account current, in which he was credited with the moneys received from him, and the net profits on all transactions resulting in a profit, and charged with the defendants' commissions, and the various sums paid out by them in settlement of contracts which had resulted in losses. None of these statements disclosed the names of the parties with whom these various contracts of purchase or sale were made by the defendants on the Board of Trade. They were all received by the plaintiff, however, and retained by him without objection to any of the items or matters therein contained, or in respect to any matters omitted therefrom, except that on one or more occasions, he objected to the amount of the commissions charged him by the defendants. By far the larger proportion of these reports showed losses instead of profits, and they were generally accompanied, or soon after followed, by requests for additional margins, which, as a rule, were promptly forwarded by the plaintiff. These accounts taken together show that upon the whole series of transactions the losses and commissions exceeded the profits by a sum sufficient to exhaust all the money advanced by the plaintiff to the defendants, and to leave him in their debt in the sum of $491.50.

At the trial, the plaintiff proved the several sums of money

deposited by him with the defendants, and also produced said several reports and statements of account, and the same were all put in evidence as a part of the plaintiff's case in chief. On this evidence, the court gave to the jury, at the instance of the plaintiff, the following instruction:

" The jury are instructed that, if they shall believe from the evidence that the defendants jointly assumed to act as commission merchants of and for the plaintiff, and by his authority, and for him, on commission, to make contracts with other commission merchants on the Board of Trade, for the purchase and sale of grain, and that the plaintiff, from time to time, deposited or paid to the defendants large sums of money as margins or security, that it devolves upon the defendant to show valid claims upon the money so deposited, by showing that it has been applied to pay losses upon contracts actually and *bona-fidely* made, and if the jury find from the evidence, that no such valid claim has been shown in favor of the defendants, upon such money so deposited or any part thereof, then for the money so deposited or such part thereof as no valid claim has been shown by the evidence, the plaintiff is entitled to a verdict."

The jury found the issues for the plaintiff and assessed his damages at \$25,000, and for that sum and costs judgment was rendered in his favor.

The principal theory upon which the plaintiff claims a right to recover is, that a large number of the contracts for the sale or purchase of grain for future delivery, upon which the defendants pretend to have lost the moneys deposited with them as margins, were merely fictitious, and were only forms of contracts, made with themselves, or with other persons in their employ. It is therefore insisted that, after the plaintiff had shown the payment of said money to the defendants, the burden was thrown upon them to prove each of the transactions in which the money was lost, and that said transactions were each valid, *bona fide* contracts, actually made by them, and this view seems to have been adopted by the court and given to the jury as a rule of law by the foregoing instruction.

It is true that, ordinarily, where the evidence charges an

agent with the possession of money to be employed or ex-
pended in the business of his agency, the burden is upon him,
in order to discharge himself, to show that he has actually ex-
pended it in the *bona fide* performance of the duties of his
agency. But this rule is subject to another well recognized
rule of evidence, viz., that when the agent, from time to time,
renders to his principal reports and statements of the business
of the agency, and of the accounts between himself and his
principal growing out of it, and such reports and statements
are received and retained by the principal without objection,
such facts are evidence of an implied admission on the part of
the principal of their correctness, sufficient at least to throw
upon him the burden of showing wherein and to what extent
they are incorrect and untrue.

The cases are numerous where, as between debtor and cred-
itor, an account rendered by one party and retained by the
other without objection, is evidence of an account stated.
Wiggins v. Burkham, 10 Wal. 129; Lockwood v. Thorne, 11
N. Y. 170; Same v. Same, 18 Id. 285; Phillips v. Belden, 2
Edw. Ch. 1; Powell v. Pacific Railroad, 65 Mo. 658; Coop-
wood v. Bolton, 26 Miss. 212; Anding v. Levy, 57 Id. 51;
Terry v. Sickles, 13 Cal. 427; Ruffner v. Hewett, 7 W. Va.
585. The rule seems to be, that as between merchants, an ac-
count rendered and not objected to within a reasonable time,
becomes a settled account, which is conclusive as between the
parties, unless some fraud, mistake, omission or inaccuracy is
shown. 1 Story's Eq. Juris., Sec. 526; Sherman v. Sherman, 2
Vern. 276; Willis v. Jarnegan. 2 Atk. 251; Murray v. Toland,
3 John. Ch. 569; Freeland v. Horan, 7 Cranch, 147. There is
some conflict in the authorities as to whether the same con-
clusive presumption should be extended to the dealings of
persons other than merchants, but even those which hold the
negative of that proposition, sustain the rule, that an account
rendered and retained without objection, is at least evidence
of an implied admission of the correctness of the account.

As said in Wiggins v. Burkham, 10 Wal. 129, "The prin-
ciple which lies at the foundation of evidence of this kind is,
that the silence of the party to whom the account is sent,
warrants the inference of an admission of its correctness.

McCord v. Manson.

This inference is more or less strong according to the circumstances of the case." And as said by Selden, J., in Lockwood v. Thorne, 18 N. Y. 285, "Its effect is to establish *prima facie*, the accuracy of the items without other proof, and the party seeking to impeach it is bound to show affirmatively the mistake or error alleged. The force of the admission, and the strength of the evidence which will be necessary to overcome it, will depend upon the circumstances of the case."

The same rule obtains in case of a statement of account by an agent to his principal. Tharp v. Tharp, 15 Vt. 105 ; Marshall v. Payne, 18 La An. 124. The case last cited was between a principal and an agent employed by him to purchase certain shares of stock, and where a statement of account by the agent received and held by the principal without objection, was held to establish an acquiescence on the part of the principal in the acts of his agent. In Mertens v. Nottebohms, 4 Grat. 163, it is held that an account of sales rendered by a consignee to his consignor is *prima facie* evidence of their correctness. This decision is placed upon the additional ground that as the consignee is bound, in the performance of his duty to his principal, not only to sell, but to keep and render proper accounts, it would be unreasonable for the principal, after the duty had been performed, to have the power of throwing upon the agent the task of furnishing evidence in relation to the transactions which may involve minute details difficult of proof. On this question Baldwin, J., says : " I take it to be correct as a general proposition, that in case of a factor, agent, trustee or executor, whose duty it is, by law or by contract, to sell and account for the proceeds of goods in his hands, and who makes a due return of his sales to the proper person or the proper custody, he may rely upon the same as *prima facie* evidence in his favor ; inasmuch as he is bound not only to sell, but to keep and render an account of his sales." The same doctrine is affirmed in Ruffner v. Hewitt, 7 W. Va. 585.

In the present case all the defendant's letters, telegrams, statements, reports and accounts were put in evidence, as we think the record clearly shows, by the plaintiff. Some attempt is made to raise a question on this point, but, as we think,

McCord v. Manson.

without any just foundation. It appears that the plaintiff being called as a witness in his own behalf at the beginning of the trial, produced several bundles of papers and identified the same, and that his counsel thereupon introduced in evidence said letters and telegrams, but in relation to the accounts of purchases and sales, he remarked that he did not offer them then, but produced them merely for the purpose of identifying them. As soon, however, as the cross-examination of the witness commenced, the defendant's counsel propounded to him some question in relation to said accounts, whereupon the plaintiff's counsel remarked, "I think they are put in, Mr. Bisbee;" and thereafter, so far as we can discover from the record, they were treated by both parties as having been admitted in evidence.

These letters, telegrams and statements of account being a part of the plaintiff's evidence, were apparently ignored by the instruction, and the jury may well have understood it to hold that, in establishing their defense, the defendants were bound to prove their use of the money in question in paying legitimate losses incurred by them on behalf of the plaintiff, by evidence quite independent of that furnished by the statements and accounts rendered, thus in effect holding that no presumption arose from the plaintiff's own evidence of an admission by him of the correctness of said accounts.

An instruction was given which submitted to the jury the question whether, under the evidence, any of the transactions in question were gambling contracts, and it is insisted that such instruction was erroneous, for the reason that there was no evidence to support it. From such examination as we have been able to give to the evidence and to the inferences legitimately arising from it, we are not prepared to say that the record is barren of evidence on that subject; but as the case does not seem to have been tried upon the theory that said contracts, or any of them, were gambling contracts, we do not deem it our duty to review the evidence in detail. But for the error in giving the instruction first above set forth, the judgment will be reversed and the cause remanded for a new trial.

Judgment reversed.