MAUD RICHARDSON FINNELL, Respondent, v. F. B. KELLOGG, NEWTON . LONG and J. W. LEWIS, Appellants.

**Kansas City Court of Appeals, May 22, 1916.**

1. **GUARDIAN AND WARD: Guardian's Bond: Evidence.** In an action on a guardian's bond a statement of debits and credits prepared by the guardian showing receipts and disbursements of the funds of the ward should be admitted in evidence where it is shown that such statement was exhibited to the ward after she reached her majority and receipted for the amount therein shown to be due her, but the exclusion of such a statement will not constitute reversible error where the guardian was permitted on the witness stand, to refresh his memory by referring to it and to read it's entire contents to the jury.

2. ————: **Dereliction of Duty of Guardian: Compensation of Guardian.** Where the basis of an action is the dereliction of duty of a guardian, neither the guardian or his sureties are entitled, such charge being maintained, to claim the compensation the law allows for proper performance of such duties.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb, Judge.*

AFFIRMED.

*John D. Taylor* for respondent.

*O. P. Ray* and *Roy W. Rucker* for appellants.

JOHNSON, J.—This is an action upon a guardian's bond. Plaintiff's father and mother died when she was an infant of tender years and her uncle, D. B. Kellogg, became her guardian and curator. He died in 1894 when plaintiff was fourteen years old and his son, the defendant Kellogg, was appointed executor of his estate and also guardian and curator of plaintiff. In November, 1896, Kellogg as such guardian and curator filed a settlement in the probate court of Chariton county where the parties all resided, showing a balance

due plaintiff of $457.80. The evidence of plaintiff tends to show that from that date to October 15, 1901, when plaintiff married and removed to Kansas City, defendant paid her altogether $70, and on January 14, 1902, paid her $15 more. Since then he has paid her nothing, nor has he filed any settlement with the probate court except the settlement of 1896. On the day preceding her marriage plaintiff signed and delivered to defendant a written receipt which in its present state is as follows: "Received of E. B. Kellogg, Guardian and Administrator, *the sum of two hundred, ninety and 38/100 dollars, in full* of all claims and demands against him as such guardian hereby ratifying all of his acts concerning my inheritance."

Plaintiff testified that defendant came to her on that day and said, in substance, that he owed her about $450, which he was unable to pay but would pay in a short time, and that in view of her approaching marriage he desired her to release him. She granted the request and signed the written receipt which, at that time, did not contain the words we have italicized. Her testimony is strongly supported by admissions afterwards made by defendant in letters written in answer to her requests for money. In a letter dated January 14, 1902, he sent her a draft which both say was for $15 and said, in part: "Your letter reached me the 10th and I promptly forgot it until too late to get a draft Saturday. I was busy yesterday and got too late for getting in bank, and come very near doing the same thing today but here you are."

April 21, 1902, he wrote: "You are all hopping on my pocketbook . . . if you have just got to have the amount at once I'll *restle* it to you." July 22, 1902: "I received your letter in due time . . . I think there is no doubt but that I will be able to send to you by the middle of August the balance due you, but if I should fail to get around by that time I don't think that there will be any doubt about me meeting with your request of some short time ago that I have it ready for you sometime in September." And on October 17, 1902, in a letter which discloses that a break had occurred in their amicable relations he said, "You shall have every cent

due to you with interest. The records of the probate court are wide open to you or any interested party and they contain every item of your account. As soon as that court meets next I will make full settlement and pay you all.''

Defendant contends that he had a full settlement of the account with plaintiff the day before her marriage, and paid her all he owed her and that she executed and delivered the receipt which was in its present form. His explanation of his subsequent payment of $15 and of the promises of further payments in the letters from which we have quoted is that instead of giving her a wedding present he promised to give her $150 in money when she needed it and that the letters referred to that promise.

The jury rejected this unpersuasive explanation and returned a verdict for plaintiff for the full amount of her demand, less admitted payments thereon of $85 and allowed her interest at six per cent per annum. Defendants appealed.

The first point argued for a reversal of the judgment is that the court erred in refusing to admit in evidence an itemized statement of the account which defendant testified he submitted to plaintiff at their meeting on the day preceding her marriage. In this statement defendant charged himself with $457.80 in accordance with his settlement of November, 1896, and credited himself with numerous payments on the account during the period between that date and October 14, 1901. The statement showed that all such payments were made by check and defendant had the cancelled checks in court and referred to them in his testimony but did not offer them in evidence. Unfortunately for him very few of the checks were made payable to plaintiff and she denied having received any of them not drawn to her order. The court allowed defendant to refresh his memory by referring, while on the stand, to the statement and in the exercise of this privilege he read all of the items to the jury and testified that he remembered having made such payments to plaintiff.

Manifestly the court excluded the paper itself on the theory that it was an *ex parte* and self-serving document

which did not fall within the purview of the rule impart-
ing the character of evidence to *ex parte* book accounts,
etc., "made at the time or nearly so of doing the princi-
pal fact." [Milling Co. v. Wash, 108 Mo. l. c. 285; Hay
v. Fire Clay Co., 179 Mo. App. 567.] The statement
being prepared immediately before the interview and,
therefore, long after most of the transactions referred to
therein, was not contemporaneous, or nearly so, with the
transactions and, therefore, was not a part of the *res
gestae.*

But it should have been admitted on another ground.
Defendant's testimony that he exhibited that very state-
ment to plaintiff and that she examined and approved it
and acting upon it executed the receipt, or release, dis-
charging him from all liability as her curator, made the
statement competent evidence. Defendant was entitled
to prove an admission of payment by plaintiff and since
his proof on that subject showed that the admission he
claims she made was predicated upon an examination
and approval of the statement, was, in fact, an acknowl-
edgment that each of its items represented a proper
charge against her, the document itself became a part of
the alleged transaction which culminated in a full and
complete settlement, and as a part of the *res gestae* pos-
sessed probative force.

But we find the error was not prejudicial and, there-
fore, does not afford a sufficient ground for disturbing
the judgment. The witness identified the statement as
the one he presented to plaintiff and she accepted as a
basis for the settlement and then, in the exercise of the
right to refresh his memory, read to the jury the entire
contents. Every fact that would have been disclosed to
the jury if the statement had been formally admitted was
disclosed to them, not only as a fact appearing on the
face of the statement but also as one vouched for by the
refreshed memory of the witness. And we think it would
be absurd to say that the mere formal admission of the
paper would have added weight to the evidence received.

The objections urged against the first instruction
given at the request of plaintiff are not well grounded.
It was the duty of defendant curator to lend the money

of his ward and account for the interest annually (sec. 444, R. S. 1909) and the burden is on him to show that he performed this duty or was unable to lend the money. On the hypothesis of plaintiff's evidence he stands convicted of gross dereliction and is in no position to claim that he did not receive the estate of plaintiff from the estate of his predecessor or did not intermingle his ward's money with his own, or that he should be allowed compensation for his services as curator. As to the latter point, since plaintiff's cause of action is predicated on his dereliction of duty, neither he nor the defendant sureties are entitled, such cause being maintained, to claim the compensation the law allows for proper performance by such fiduciaries. [State to use, v. Richardson, 29 Mo. App. 595; Roberds v. Bryan, 105 Mo. App. 249.] There is no conflict between the instructions given at the request of the respective parties.

The point that the motion for a new trial should have been sustained on the ground of newly discovered evidence is refused for the reason that no diligence was shown. [King v. Gilson, 206 Mo. l. c. 281; Nugent v. Packing Co., 208 Mo. 480; McDaniel v. Emmick, 149 Mo. App. l. c. 277.]

There is no prejudicial error in the record and the judgment is affirmed. All concur.