MALINDA E. DAMERON, Appellant, v. B. M. HARRIS, Administrator of Estate of J. H. PATTON.

Division One, March 2, 1920.

1. **ACCOUNT RENDERED**: Implied Acquiescence and Promise. An account rendered, showing a balance claimed by the creditor, unless objected to by the debtor within a reasonable time, is evidence that the debtor assented to it as correct and of an implied promise to pay the balance shown by it; and the rule applies to principal and agent, and to other persons who have business relations with each other, as well as to merchant and customer, or dealings between merchants.

2. ——: ——: **Reasonable Time.** What constitutes a reasonable time in which to object to an account rendered depends on the circumstances of the particular case. One circumstance is the local situation of the parties. Acquiescence for a whole year, without objection by the female owner of a large farm, in the itemized accounts rendered by her agent, accompanied by a letter explaining her overdraft and the amount credited on her note for money advanced by him, and calling attention to the balance, together with other letters written in the subsequent months to each other in which reference is made to the state of the account, amounts to an account stated, and in the absence of fraud, mistake or accident forecloses a readjustment.

3. ——: ——: **Readjustment: Continuous Account: Fraud or Mistake.** Acquiesence in an account stated does not preclude one of the parties from showing that certain items were not embraced in it, if a proper suit is brought to amend the adjustment for fraud, mistake or accident; but such a suit must proceed upon the theory that the account had been adjusted and items omitted which should have been included; if the demand is based on the theory that the account was a continuous one for twenty years, with no adjustment of it at any time, the only question of inquiry is whether there had been periodical settlements within those years, with such acquiescence therein for a reasonable time under the circumstances as render them accounts stated, and if the facts establish those things the settlements cannot be reopened.

4. ——: **Continuous Account: Periodical Settlement: Limitations.** The character of an account as a continuous or running one ceases at each periodical settlement thereof, and the Statute of Limitations commences to run from the date of the settlement against the implied promise to pay the balance shown thereby to be due,

5. ———: **Account Book: Entries by Amanuensis.** Entries made by the agent or under his direction, systematically, in the usual course of business and as minutes of the business, at the time the trans-actions occurred or as nearly so as the circumstances of the business will reasonably admit, whether made with his own hand or by other persons who wrote in his presence and pursuant to his orders, are regular and original entries, and the book in which they were made is competent evidence, in his favor and against him.

6. ———: ———: **Contemporaneous.** Regular entries in an account book made in the course of business to be competent as evidence and an exception to the rule against hearsay must be made at the time of the transaction noted, or soon enough after the event to be in the nature of *res gestae* and to render it unlikely that they were the result of a design to defraud, concocted by the entrant after the occurrence. But if they were made immediately following the transaction if it occurred in the office where the account book was kept, or promptly after the agent's return thereto from the place where the business was transacted, they are substantially contemporaneous, and competent.

7. ———: **Agent's Compensation: In Excess of Agreement: Acqui-escence.** Unless the owner assented to a charge of one hundred dol-lars annually instead of fifty dollars for the services of her bailiff in managing her large farm and protecting her financial affairs, he was bound by his contract, regardless of the importance and oner-ousness of his duties. But where the increase was indicated in the itemized accounts rendered, the value of the services far ex-ceeded the compensation, and the evidence clearly establishes that she acquiesced in the increased charge, he is not chargeable with such increase.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Wool-folk*, Judge.

Affirmed (*upon condition*).

*Hostetter & Haley* for appellant.

(1) The referee erred in holding that decedent and plaintiff agreed on a stated account, and in holding that the account was closed at intervals during decedent's twenty years' management on the farm, and in holding that all items of account in plaintiff's claim which accrued more than five years before same was filed in the probate court were barred, and the circuit court likewise erred in adopting these views and findings of the referee. (2) The referee erred in not considering the items of the

account even on his own theory, back as far as April 25, 1908, at which date he fixed the second break in the continuity of the account, and the circuit court erred in acquiescing in this position of the referee. "An account is not closed each time a footing is made and the balance carried to another column." 1 R. C. L. p. 206, par. 2. An account stated does not preclude the party denying its correctness from showing that certain items were not included therein. 1 R. C. L. p. 220, par. 20; 1 R. C. L. p. 210, par. 7. When it is fairly inferable from the conduct of the parties, while the account is accruing, that it is to be taken as one, then none of the items are barred by the Statute of Limitations unless all are; and if there be any item in the account within the five year period of limitation, then such item will draw all the items antedating such five-year period, so that none will be barred; and this is true even though all the items are on one side. Chadwick v. Chadwick, 115 Mo. 586; Ring v. Jamison, 66 Mo. 424; Roberts v. Neale, 134 Mo. App. 612. An account stated cannot become such merely by being presented by the one party to the other and the retention of the same by the latter without objection. If the party to whom the account is rendered has no knowledge of his own interests in the matters contained in the account, and had not the opportunity to acquire knowledge, as to its incorrectness as to omitted items in his favor, then such party is not bound thereby. It is only assent with knowledge which counts. 1 C. J. p. 686, sec. 264; 1 C. J. p. 714, sec. 353. Accounts between persons standing in confidential relations toward one another will be held open more readily than among persons dealing at arm's length; and complicated accounts will be opened up more readily than simple ones in the interest of the one who could not have had full knowledge. 1 C. J. p. 709, sec. 335; 1 C. J. p. 711, sec. 336. (3) The referee erred in admitting in evidence the "book account" alleged by defendant to have been kept by decedent, the circuit court sanctioning the ruling. In order to render an account book legitimate evidence, the entries must be contemporaneous with the transactions

entered. Nelson v. Nelson, 90 Mo. 463. (4) The referee erred in finding on the issue of compensation $100 per year instead of $50 per year and the circuit court erred in upholding such finding of the referee. (5) In a compulsory reference, as in the case at bar the Supreme Court is not bound by the findings of either the referee or the circuit court, but can make its own findings from the evidence. It is not even controlled as to the weight of the evidence by the lower tribunals, as in ordinary cases involving issues of fact. Williams v. Railway Co., 153 Mo. 487; Buxton v. Debrecht, 95 Mo. App. 599; Caldwell v. Wright, 88 Mo. App. 403; Small v. Hatch, 151 Mo. 300.

*Frank J. Duvall* and *Pearson & Pearson* for respondent.

(1) Every communication sent to Mrs. Dameron by J. H. Patton, containing a statement of their account, or any kind of a statement, together with a statement of the amount of the balance due to her from Col. Patton, or from her to Col. Patton, and not objected to by Mrs. Dameron within a reasonable time thereafter, constitutes an account stated, up to that date; and none of the items as to any other business transacted by him for her, previous to that date, are open to investigation. Brown v. Kimmell, 67 Mo. 431; McCormick v. Sawyer, 104 Mo. 43; Powell v. Pacific R. R. Co., 65 Mo. 661; Alexander v. Scott, 150 Mo. App. 222; Grocery Co. v. Hotel Co., 183 Mo. App. 435; Keller v. Olson, 187 Mo. App. 474. (2) The Statutes of Limitations commence to run from the time the account is stated. Estes v. Hamilton-Brown Shoe Co., 54 Mo. App. 550. (3) Col. Patton was a farmer who kept an account book in which he entered the items of the various transactions he had, both with reference to the farm of Mrs. Dameron, which he was looking after, and other matters. This account book was properly identified and introduced in evidence. The items entered in it ¬ evidences of such transactions in favor of Col. Patton with Mrs. Dameron concerning this farm. Anchor Mill-

ing Co. v. Walsh, 108 Mo. 285; Lyons v. Corder, 253 Mo. 549; Siegelman v. Rodgers, 113 Mo. 649; Schmidt v. Lightner, 185 Mo. App. 548. (4) His book account shows that Col. Patton had made an annual charge of one hundred dollars, as compensation for his services, and there had never been an objection made by Mrs. Dameron.

GOODE, J.—Prior to 1893, plaintiff's husband, James Dameron, died, leaving a last will, by which he devised to plaintiff, for her life, a farm of 640 acres, of which 200 acres lie in Lincoln County and 440 acres in Pike County. The farm is two miles south of Paynesville, in Pike County, where James H. Patton, known in the vicinity as Colonel Patton, resided. He was an experienced and prosperous farmer and had managed his own affairs well; so on October 1, 1893, plaintiff employed him to take charge of her farm for an indefinite period, as she intended to go to Bowling Green, in Pike County, for the sake of the health of one or more of her children, of whom there were living at that time one son and two or three daughters. Col. Patton was to be paid fifty dollars a year for his services, which began October, 1893, and continued twenty years, and until November 17, 1913. Meanwhile plaintiff and her family resided or sojourned for periods not definitely stated, at Bowling Green, Kirksville and Eolia, places not far away: at Hugo, Oklahoma, Hot Springs, Arkansas, and St. Louis. Col. Patton died in 1914, and on May 11, 1915, a demand against his estate for $29,209.18, which is the subject-matter of the present proceedings, was presented to the probate court and later was lodged in the circuit court by appeal. The demand is for many items of indebtedness alleged to be due plaintiff on account of money received by Col. Patton for rent of the farm, or portions of it, the proceeds of crops, timber and other articles sold from the farm, which were never accounted for to plaintiff; overcharges for the services of deceased; rentals never paid to plaintiff; damage to the farm to the amount of $2500, caused by cutting down timber trees, contrary

to plaintiff's order; damage in the sum of $3000, due to not rotating the crops to preserve the fertility of the soil, and permitting the fences and other improvements to get out of repair; and for $3500, the value of corn, hay and other products of the farm which he is alleged to have surreptitiously converted to his own use. Attached to the statement of demand is an itemized account, composed of four hundred and seventy-six debits against the deceased and two hundred and five credits, showing the balance of $29,209.18 in favor of claimant, the total debits amounting to $47,466.12 and the credits to $18,256.94.

Defendant's answer, as adminstrator of the estate of deceased, states that plaintiff knew what was being done on the farm during the years deceased managed it; that deceased kept a book account of all items of money received by him as plaintiff's agent and baliff, which showed for what they were received, and his disbursements connected with the management of the farm from the year 1893 to and including the year 1913; that said account covered not only the receipts and expenses of the farm, but money paid by deceased to plaintiff, or on her order during those years.

The answer also alleged that a true accounting was made to plaintiff by the deceased yearly, or oftener.

The bar of the Statute of Limitations was pleaded against all items of plaintiff's demand which accrued prior to the year 1910.

Defendant set up a counterclaim upon allegations that deceased, during the years from 1910 to 1913, inclusive, paid out for expenses in conducting the farm and to plaintiff, or others upon her order, sums in excess of his total receipts from the farm during those years, to the amount of $1140.75, and that these payments were made at the request of plaintiff. An itemized account was attached as an exhibit and referred to in the answer, which showed a balance due defendant, as administrator, of the amount aforesaid.

On account of the multitude of transactions involved in plaintiff's demand, ranging over twenty years, the

case was referred by the circuit court to Hon. L. G. Blair, who was directed to take testimony regarding the various items of the demand, make a full statement of the account between the parties, together with his findings thereon, and return the same with the evidence, into court. The evidence consisted of the testimony of nearly fifty witnesses and about two hundred and fifty exhibits, in the form of letters which passed between plaintiff and deceased, and checks drawn by her on her bank account, or by deceased for payments to her or others by her order, or for the expense of the farm. The referee found, and the numerous letters in evidence support the finding, that deceased kept plaintiff informed regarding his management of her affairs while he had them in charge; that he reported regularly about the crops raised and sold, collections made, contracts with tenants, the condition of the crops, the clearing of land and the cutting and sale of timber, lumber, and posts, repairs made and the expenditures therefor, the payment of premiums due on fire and life insurance policies held by plaintiff, the sums paid to her daughters and on her debts to other persons, and credits made on a promissory note of plaintiff to deceased; that he stated from time to time the balances of money in his hands belonging to plaintiff and subject to her order; notified her when she overdrew her account with the Clifford Banking Company; that he balanced her account from time to time, and sent her statements of the condition of the account. The referee found further that, by letter and orally, plaintiff, on several occasions, expressed satisfaction with the way deceased had conducted her business, and that the first complaint made by her was on December 5, 1913, which was about some matters deceased explained in a letter dated December 23, 1913, written in answer to her complaint.

Plaintiff resumed possession and management of the farm in November, 1913.

The referee held all items of the demand which accrued more than five years before May 11, 1915, when

the claim was presented in the probate court for allowance, were barred by the Statute of Limitations.

Deceased kept in a book of accounts minutes of his transactions in handling plaintiff's business, and after his death a copy of said book account, showing the receipts and expenditures of deceased as bailiff, from October 1, 1893, to November 17, 1913, was furnished by the administrator of the estate to Dr. T. E. Garrett, plaintiff's son-in-law. It was found by the referee that the present demand is based, with few exceptions, on the various items of income from the farm shown by said copy of deceased's book account, but that credit is not allowed for many of the expenditures and other payments made by deceased and recorded in his book; and that whereas the deceased had entered a charge of $100 a year for services, the plaintiff only gave the estate credit for fifty dollars a year, claiming deceased had agreed to serve for the latter sum.

Not only does the itemized statement attached to the statement of plaintiff's demand omit a large portion of the credits in his favor, which he had recorded in his book account, but it charges him with various debit items not shown in his book. These debits are for sums alleged to have been received in many ways; rentals collected, sales of produce from the farm, wood, timber, etc., sold by deceased or converted to his own use. But most of the sum of twenty-nine thousand dollars and more claimed to be due plaintiff, consists of the balance left after deducting some of the credits shown by the account book of deceased, and omitting many others noted as paid by him to plaintiff or for her, or for the expenses of the farm.

After ruling that the Statute of Limitations applied to all items of the claim which fell due prior to May 11, 1910, the learned referee proceeded to deal with the items charged against deceased in plaintiff's demand for the subsequent years, to-wit, from May 11, 1910, to May 11, 1915, and not noted in his book account. Of these items there were sixteen, and the referee rejected twelve

of them, amounting to $4963.33, and allowed four, which amounted to $72.50. It thus appears the referee found that during the five years immediately preceding the presentation of plaintiff's demand, Col. Patton had become indebted to plaintiff in the sum of $72.50, for receipts not charged against himself in his account book, and that items claimed by plaintiff to the amount of $4963.33 ought not to be charged against the estate. Adding $72.50 to the charges deceased had made against himself during said years in his book, the referee found the total amount of the debits against him for those years was $7111.05. Taking up the counterclaim and considering the items of credits which the estate of deceased ought to be allowed for money paid by him during the five years to plaintiff or on her order, or for necessary expenses and repairs on the farm, etc., the referee found they amounted to $8,912.26. Deducting the debits charged, $7111.05, from that amount, it was found plaintiff was indebted to the estate in the sum of $1801.21, and judgment was recommended for defendant and against plaintiff for that amount, notwithstanding the balance found was more than the administrator demanded in his counterclaim. Exceptions were duly filed by plaintiff to the report, and on the hearing of them the court confirmed the report, except as to a few minor items amounting to eighty dollars, which were charged against defendant and in favor of plaintiff, and except, too, the sum of $661.21, allowed by the referee to defendant in excess of the total amount ($1140) demanded by defendant in his counterclaim, which the court disallowed, leaving thereby a net balance of $1060 owing to defendant. Judgment was rendered in his favor and against plaintiff for that amount. Plaintiff appealed from the judgment.

The following errors are assigned: first, the ruling that plaintiff and deceased had agreed upon a stated account at intervals during the twenty years; second, the ruling that the Statute of Limitations had run against all items which accrued more than five years before the presentation of the demand; third, in refusing to

consider items as far back as on April 25, 1908, if, as the referee found, the account was then settled between the parties; fourth, the admission in evidence of the entries in the account book of deceased; fifth, the allowance of one hundred dollars a year to deceased for his services, instead of fifty dollars.

The referee found, and the circuit court accepted his finding, that the account between plaintiff and Col. Patton had been formally stated and settled by them three times during the period of the agency and on these dates: December 1, 1905, April 25, 1908, and January 13, 1913. One objection made to this finding is that plaintiff had no opportunity to learn whether the statements furnished by deceased were correct; presumably, because she was residing so far away from the farm as to preclude investigation. This fact, though it is not expressly mentioned in the brief for plaintiff, is the only one which stood in the way of her looking into her affairs and ascertaining whether the statements she received were accurate.

For a portion of the period of Col. Patton's agency, plaintiff dwelt near the farm and could easily have made inquiries; but an account of mutual dealings between two parties may be adjusted and settled by one rendering a statement to the other, even if the latter is absent from the place where the transactions occurred; although this circumstance will be considered in determining whether timely objection to the statement was made, thereby preventing it from acquiring the *status* of a settled account.

I. An account rendered, showing the balance claimed by the creditor, unless it is objected to by the debtor within a reasonable time, is evidence that the debtor assented to it as correct and of an implied promise to pay the balance as shown. [Powell v. Railroad, 65 Mo. 658; Koegel v. Givens, 79 Mo. 77.] What constitutes a reasonable time wherein to object depends on the circumstances of the particular case, and, as said, one circumstance is the local situation of the

Account Stated.

parties. [Brown v. Kimmel, 67 Mo. 430; Martyn v. Arnold, 36 Fla. 446.] At an early day this court held, in accordance with the law elsewhere, that the doctrine of settled or stated accounts, although applied originally only to dealings between merchants, has been extended to other classes of persons who had business relations; a ruling since followed. [Shepard v. Bank, 15 Mo. 144; Brown v. Kimmel, 67 Mo. 430; see, too, McKeen v. Bank, 74 Mo. App. 281.] It applies, as well to the relation of principal and agent, as to that of merchant and customer. [McCord v. Manson, 17 Ill. App. 118; Ruffner v. Hewitt, 7 W. Va. 585.] Therefore as the rule is no longer confined to mercantile affairs, what was said in one case about the effect of the retention without objection, by a debtor who lived in this country, of statements of dealings rendered by a firm of merchants in England, is in point. In considering those facts the Supreme Court of the United States declared that "when one merchant sends an account current to another residing in a different country, between whom there are mutual dealings, and he keeps it two years without making any objection, it shall be deemed a stated account, and his silence and acquiescence shall bind him, at least so far as to cast the *onus probandi* on him." [Freeland v. Heron, 7 Cranch, [U. S.] 147.] Treating the same point, it was held that a delay in objecting for two weeks after the reception of his account by a debtor, when the parties lived in the same city, tended to show he accepted it as accurate. [Mulford v. Caesar, 54 Mo. App. 263, 269.] So, it was said "an account which had been presented and no objection thereto had been made after the lapse of several posts, is treated, under ordinary circumstances, as being, by acquiescence, a stated account." [Powell v. Railroad, 65 Mo. 658.] If the account between plaintiff and Col. Patton was stated by him to her on the three dates mentioned, as the court below found, the facts are that she never objected to the first and second statements, nor to the one of January 13, 1913, except a complaint contained in

17—281 Mo.

a letter written by her in December of said year, more than eleven months after she had received the statement; but that complaint was directed against a small item (the amount claimed being $35, and the value found by the referee $5) for wood deceased was alleged to have used and not recorded. Far from complaining of the account rendered in January, 1913, a letter written to deceased July 23, 1913, says she felt that neither she nor her business could get along without him and that whenever she was in trouble he would lend her a helping hand. In October, 1913, she said to the deceased that if the farm had not been left to him years before "we would not have a dollar;" and on the same occasion Mrs. Garrett, plaintiff's daughter, said in the plaintiff's presence: "Mr. Patton, you have been a father to us. If it had not been for you I don't know what we would have done." In view of the foregoing facts we hold plaintiff's absence from her home did not prevent the statements rendered to her by Col. Patton from becoming evidence from which the finding might be made that their affairs were adjusted by mutual agreement, no objection having been made by her to the statements.

It is denied the evidence supports the finding that statements were rendered to plaintiff on the dates mentioned, and this denial calls for an examination of the facts. As regards the settlement of December 1, 1905, a letter written by the deceased to plaintiff on that date, after mentioning some particular transactions, said: "I balanced your account to-day and find you have overdrew [sic] $269.76. I have sent you and the girls this year about $1750." And on November 26, 1906, deceased wrote plaintiff another letter with her tax receipts for the years 1903, 1904, and 1905 inclosed. Therein he said: "I also send you statement of your account. I sent you a statement last year on *December first,* and you had over-drawn $269.76." (Our emphasis.) Much correspondence passed between the parties after that letter, and in none of them did plaintiff either deny receiving the statement of December 1, 1905, or object to any item of it, or to the

balance of $269.76, shown by it to be due deceased. In said letter of November 26th, deceased gave a statement of further transactions since December, 1905, showing that he had paid out $1697.50 in the interval and had received $1695.95, leaving plaintiff overdrawn to the amount of $1.55. In this connection another relevant fact is that the book account of deceased showed the account was balanced December 1, 1905, and the following entry made: ''To balance due $269.76.'' We approve the finding that the account between plaintiff and deceased was stated to her on December 1, 1905, and that she acquiesced in the statement and in the balance shown to be owing to deceased.

Regarding the second settlement of April 5, 1908, Ed M. Forgey, a witness who sometimes made entries for deceased in the latter's book, testified that on said date he balanced the account between plaintiff and deceased, and entered these minutes: ''April 25, 1908, to balance $180.55; April 25, 1908, balance carried to page 250, $180.55;'' that at the request of Col. Patton he prepared an itemized list of the transactions between the parties from October 31, 1906, to April 25, 1908. As bearing on the question of whether plaintiff received that statement, we notice an excerpt from a letter of deceased of the same date, introduced in evidence by the plaintiff: ''Enclosed please find note of $321, including int and receipt of $900 to credit on note of $1100, which leaves a balance of $180.55 due you on my account. Thinking perhaps you might need some money on urgent call I have left the amount of $180.55 due you on my books.'' A year later, in 1909, plaintiff gave deceased a note for $350 to balance her account which she had overdrawn; and neither in the letter inclosing the note, nor in any other, did she complain that the statement by deceased in his letter of April 25, 1908, of the amount due her ($180.55) was incorrect. We approve the finding that there was a settlement of accounts between plaintiff and deceased on April 25, 1908, which was acquiesced in by her and that said settlement showed deceased then owed her $180.55.

As to the third statement of January 13, 1913, deceased wrote to plaintiff, among other things, as follows: "Enclosed please find statement of account. I have paid out $946.81 since our last settlement. I have received since that time $1194.34, leaving a balance of $284.53 in my hands." (The referee found the balance stated was too large owing to an error in calculating, and that it should have been $248.53.) In a letter written December 26, 1912, by F. W. Patton, who sometimes acted as amanuensis for the Colonel, he said: "The Colonel says he will send you a statement soon." A statement was sent plaintiff which embraced the items from February 7, 1910, to January 9, 1913, and showed a balance due deceased of $248. It was accompanied by a letter dated December 9, 1913, which said: "This statement and the statement I sent you runs back three years. I hope you will find it all O. K. Anything further you wish to know, let me hear from you and we will try to explain." The corresponding entry on the account book was this: "January 13, 1913. To balance due $248.53." Plaintiff introduced in evidence an exhibit headed, "Statement of Mrs. M. E. Dameron's Account,' which was taken from the account book of deceased. It runs from January 13, 1913, to November 17, 1913, and the first item of January 13th is $248.53, the exact amount of the balance shown by the previous statement of January 13, 1913. On those facts we approve the finding that the account between the parties was settled on January 13, 1913. We add that in addition to those formal statements which were found to have been acquiesced in by plaintiff, deceased wrote her quite a number of letters, in each of which he mentioned a balance in his hands to her order.

II. It is further said the fact that an account between parties who have had mutual dealings has been stated, does not preclude one of them from proving certain items were not embraced in it. This is true if the proper suit is brought to amend the adjustment for fraud, mistake, accident, etc.; but

Readjustment.

the plaintiff's demand does not proceed on the assumptin the accunt between her and the deceased had been adjusted and items omitted which should have been included. Her demand is based on the theory that the account was a continuous one for twenty years with no adjustment of it at any time. This point was adjudicated in a case where the plaintiff claimed the right to recover for extra work and materials done and furnished by him and not included in his contract. There was found to have been a settlement of the account between the parties covering all the work and materials involved; wherefore the court rejected the contention that the plaintiff could proceed for alleged omitted items "as if no settlement had been made." The court held that when parties, having mutual matters of account between them, growing out of a contract, deliberately account together and state a balance, the settlement cannot be reopened or gone into except upon proof of fraud or mistake or that certain matters were intentionally omitted from the settlement. [McCormick v. Transit Ry. Co., 154 Mo. 191, 201.] In another case it was said that "the presumption is that all previous dealings between the parties relating to the subject-matter of the account, are adjusted." [Pickel v. Chamber of Commerce, 10 Mo. App. 191, 195.] Even were it conceded, as it is not, that the probate court would have jurisdiction to open up the settlement for fraud or mistake, neither in her statement of demand nor other pleading, did plaintiff attack the settlements, but contended throughout there had been none.

III.   The second error assigned is for barring by limitation those of the items demanded which accrued prior to May 11, 1910. The character of the account as a continuous and running one ceased at each settlement of it and the statute commenced to run from that date against the implied promise to pay the balance shown by the settlement. [Coudrey v. Gilliam, 60 Mo. 86; Estes v. Hamilton-Brown Shoe Co., 54 Mo.

*Limitations.*

App. 543; Gunn v. Gunn, 74 Ga. 555: Harrison v. Hall, 8 Mo. App. 170.]

Counsel hardly controvert the proposition last stated, but argue as one of their assignments of error that if there was an adjustment of the account on April 25, 1908, the referee and the court should have considered the items which accrued after said date and up to May 11, 1910, as being parts of a continuous account from said April 25th, as well as those which accrued after the later date. The account between the parties having been settled January 13, 1913, the referee should not have gone farther back in considering the various debits and credits. The reason he assigned for doing so was that defendant in his counterclaim requested allowances for disbursements during the years 1910 to 1913, inclusive; that is, both parties were asking for relief regarding transactions during those years. In this respect we think the learned referee and the court below fell into error. Plaintiff did not ask that items back to 1910 be considered save as they were embraced in the entire list back to April 25, 1908; or to be more exact, back to the beginning of the agency of the deceased in 1893. We cannot say plaintiff would have gained nothing had the referee passed on the transactions of every year after April 25, 1908, if said date was to be regarded as that of the last settlement. Maybe plaintiff would have been benefitted by considering matters between 1908 and 1910. The last settlement was on January 13, 1913, which showed the balance then due the deceased was $248.53.

As shown above, another account running from January 13, 1913, to November 17, 1913, and covering the remainder of the period of the agency, was rendered. This account was not acquiesced in, at least some of it was not; and the only transactions open to investigation on the merits were of that period. Now every item for the year 1913, which is noted in plaintiff's demand, corresponds with the statement deceased rendered for that year, except six charges against him, amounting to $351, and twenty credits claimed by him, amounting to $321.84.

The referee rejected all the charge items as not established, except two, to-wit, $20 for gravel and $25 due on a note given by the tenant Guy, or $45 for both. All the credits shown on the statement rendered by Col. Patton for the year 1913, and not allowed him in plaintiff's statement of demand for said year, were allowed by the referee. The result would be to reduce by forty-five dol- lars the balance due deceased on November 17, 1913, $1086.09, the sum shown by his statement, leaving the amount due him $1041.09. .The referee's finding of $1801.21 was reached by including credits back to 1910, an amount the court cut down to $1060 by rejecting the excess found by the referee above the amount demanded by defendant in his counterclaim and by. charging the estate with two or three small amounts the referee had denied.

IV. The fourth error assigned is the admission in evidence of the entries of deceased in his own favor in his account book, those against him being regarded as competent for the reason that. they were admissions op- posed to his interest. The argument is that the credit entries were incompetent because not shown to have been in the handwriting of the de- ceased, nor to have been made at the time the transactions they related to occurred. The proposi- tion only affects the affairs between the parties of the year 1913, for we have held the account was balanced and settled on January 13, 1913. The account book was proved to have been one wherein deceased kept a, record of his business affairs, not only those between himself and plaintiff, but also those between him and other per- sons. His office was in Paynesville, where he lived and where the bank was located in which he deposited money to plaintiff's account and against which she drew checks. Paynesville was only two miles from the farm, and the conclusion to be drawn from the evidence is that deceased made entries in the book at his office after he had trans- acted business at the bank or on the farm. Many of

*Account Book as Admissions.*

the entries he made in person, but he often called on
Ed Forgey, Arthur Forgey, and his brother F. W.
Patton and his nephew W. L. Patton, to enter items
for him. It is in testimony that F. W. Patton was
accustomed to assist him in keeping this book; also
that the Colonel had used the book for twenty years.
In a long examination and cross-examination of W.
L. Patton about numerous entries the witness testi-
fied they were in the handwriting of one or the other
of the persons mentioned; that the book was the one in
which the Colonel made the "original entries in all busi-
ness transactions;" that when entries were made regard-
ing deals on the Dameron farm, Col. Patton produced
memorandums he had made at the farm at the immediate
times of the transactions and would ask the witness to
enter them in the account of Mrs. Dameron; that the
entries written by the witness were made not at the time
of the transaction, "but as close as a man could do so;"
that the Colonel did most of his business in the office,
when he entered a transaction at the very time it took
place, but if he was out at the farm he would put it in his
book and enter it as soon as he could; that his custom
was to do so as soon as he got to the office; that when the
entries were made Col. Patton would be present and
would direct them. This happened not only when the
witness himself was doing the writing, but also when
his father was. Another witness, Ed Forgey, testified
that he wrote in the book for Col. Patton as a matter of
friendship; was asked about entries on various pages,
said he had made out statements for Mrs. Dameron from
the book. Testified also as to various entries in his hand-
writing; that he had seen the Colonel write entries him-
self; that it was a book of original entry of the Colonel's
business transactions; never kept any other book of
account; that the Colonel made the entries from memory.
Dr. Garrett, a son-in-law of plaintiff, testified that he
went over some of the pages of the book with Col. Pat-
ton once or twice, and that the Colonel showed him this
book "as a book of his original entries he kept his ac-
count in."

That the entries in question were made by the Colonel or under his direction, systematically, in the usual course of business and as minutes of business, is beyond doubt. We consider it immaterial that many of them were made by other persons, since the testimony shows these persons wrote in the presence of deceased and pursuant to his orders; in other words, they acted as mere amanuenses to relieve him of the distasteful labor of writing. [2 Wigmore, Evidence, sec. 1530, p. 1894; 1 Greenleaf, Evidence (16 Ed.), p. 206; Stanley v. Wilkerson, 63 Ark. 556; American Surety Co. v. Pauly, 38 U. S. App. 254.]

As regards the time when the transactions were entered as compared with when they occurred, this was shown to be immediately following the transaction if it occurred in the office where the book was kept, or if it did not, as soon thereafter as the Colonel returned to the office. Regular entries in the course of business to be competent as evidence and an exception to the rule against hearsay, must be made at the time of the transaction noted. They must be in the nature of *res gestæ,* or at least written soon enough after the event to render it unlikely they were the result of a design to defraud concocted by the entrant after the occurrence. In Anchor Milling Co. v. Walsh, 108 Mo. 277, it was said the entry to be competent must be written at the time, or nearly so, of the principal fact. Neither the adjudications nor the text-works define with precision what is meant by "contemporaneous," in connection with this rule of evidence . Wigmore says to be admissible, "the entry should have been made at or near the time of the transaction recorded—not merely because this is necessary in order to assure a fairly accurate recollection of the matter, but because any trustworthy habit of making regular business records will ordinarily involve the making of the record contemporaneously. The rule fixes no precise time; each case must depend on its own circumstances." [2 Wigmore, Evidence, sec. 1526, p. 1892.] Greenleaf states the rule as follows: "The entry must be fairly contemporaneous with the event recorded, though no precise time can be fixed as the limit." [1

Greenleaf on Evidence (16 Ed.), sec. 120a, p. 205.] Another treatise says it should be made at or about the time. [4 Chamberlayne, Evidence, sec. 2870.] And again, that it must be "substantially contemporaneous." [Id. sec. 2890, p. 4018.] Again, that it must not be unreasonably remote from the occurrence of the events. [Id. sec. 2890, p. 4020.] It was, of course, impossible for deceased to record in his book transactions at the farm the instant they occurred; although it was proved he kept memorandums of those transactions and from them, or his memory, entered the items in the book as soon as he could do so, usually when he reached his office. We hold the book account consisted of regular and original entries which made it competent as evidence.

V. The fifth assignment relates to the allowance of one hundred dollars a year to deceased, whereas his contract was to serve for fifty dollars. In the several statements rendered by him, including that of 1905, he credited himself with one hundred dollars for his services. It is true the original contract was for fifty dollars, but he appears to have conceived that he ought to be paid more. Of course unless plaintiff assented to the change, deceased was bound by his contract, regardless of how onerous and important his duties were. But their scope is a circumstance to show plaintiff did assent to an increase. Col. Patton was not only the bailiff of plaintiff in the management of the farm, but the correspondence shows he was her general financial adviser, helped her in the matter of procuring loans, paid her insurance premiums, warned her against her daughter's spending too much money, notified her about overdrafts at the bank, took up and carried a note of hers which was secured by a mortgage on the farm, when the holder of the note was threatening to foreclose; in short, looked after every interest of plaintiff in the vicinity of the farm. She made no objection to the claim for increased compensation shown by the statements rendered, and long afterwards expressed satisfaction

*Agreed Compensation.*

with the way deceased had managed her business.   No other conclusion is possible, except that the increased credit of one hundred dollars, claimed for years before the agency of the Colonel ceased, was acquiesced in by plaintiff.

It is proper to say that two items in plaintiff's demand, one for $2500 for damage to the farm by cutting timber and one for $3000 damage caused by non-rotation of crops, were wholly unproved and were rightly ignored by the referee and the court below.

It is unnecessary to reverse and remand the cause for the error in dealing on their merits with transactions antecedent to the last settlement.   We have examined the findings on the items subsequent thereto and accept the conclusions of the referee and the court below.

We find that forty-five dollars of charges ought to be deducted from the $1086.09, the amount due deceased on November 17, 1913, as shown by the statement rendered November 19th, leaving the sum due $1041.09.    If defendant will remit, within ten days, said sum of $45 from the judgment, it will be affirmed; otherwise, it will be reversed and the cause remanded with an order to determine on the merits the several items of debit and credit that ought to be allowed for transactions after January 13, 1913.   All concur.