LOUIS F. MCKELLY, Appellant, v. METCO PRODUCTS, INC.—No. 39429.—193 S. W. (2d) 28.

Division One, February 11, 1946.

Rehearing Denied, March 11, 1946.

*J. J. Brinkman* and *Richard M. Stout* for appellant.

994

*Moser, Marsalek & Dearing* for respondent.

 BRADLEY, C.—Action in two counts to recover commission on war contracts alleged to have been procured by plaintiff for defendant. The first count sought recovery of 10% commission—$34,422.25; the second count was on quantum meruit for $16,788.62. Verdict and judgment went for defendant on both counts and plaintiff appealed.

In 1942 defendant obtained, so far as involved here, four war work contracts for the manufacture of parts of antiaircraft shells, upon which contracts plaintiff based his petition for commission. Three of these contracts were with American Well & Prospecting Company, Corsicana, Texas, and one with Harry Darby, St. Louis. The quantum meruit count was based on these same contracts, and on the theory that 5% would be reasonable. And plaintiff requested and was given an instruction which told the jury that if they found for plaintiff on the quantum count, the verdict could not exceed 5% of the total amount of the contracts. Defendant answered by a general denial and further alleged that plaintiff was on a salary basis and not on a commission basis.

 Error is assigned on the admission of evidence and on defendant's instruction No. 3.

Prior to 1942 the corporate name of defendant was Butler-Kohaus, Inc. Henry J. Butler was the principal owner. In 1942, Walter E. Pauley came into the company and the name was changed to Metco Products, Inc. Prior to 1942, the business of Butler-Kohaus was principally that of retail sales of lighting fixtures. In 1934, plaintiff became a salesman for Butler-Kohaus on a 10% commission basis, except in some instances the commission would be adjusted and might be less than 10%. Plaintiff had what is termed a weekly drawing account and in addition was paid $15.00 weekly, designated as salary. The weekly drawing account was increased at intervals, and was $60.00 in 1941. The weekly drawing account was charged against his commissions, but the $15.00 payments were not. Defendant concedes that plaintiff was on a 10% commission basis as a salesman of light fixtures, but contends that on April 1, 1942, he was put on a salary basis, and that all that he did in the procurement of the contracts above mentioned was on a salary basis. The evidence on that question was conflicting, and the finding, as stated, was adverse to plaintiff.

The evidence complained of concerns defendant's exhibit 6, a book entry. In order to better appreciate this assignment some explanation is necessary. According to defendant's evidence, when Pauley came into the defendant company, and war contracts were obtained, the capital structure was changed; two classes of stock, A and B, were created. Class A stock represented the joint interest of Butler and Pauley for the war contracts which was termed the war products

division of the company. The class B stock represented the existing business of the company in the sale of light.fixtures. Pauley had no interest in the class B stock. All the details of changing the capital structure were not completed until July, 1942. Books for the changed capital structure were not set up prior to July, 1942, and all transactions for the new setup were entered on the old books of Butler-Kohaus. And what defendant terms as plaintiff's salary was entered on these books as if it were commission, just the same as were the entries when plaintiff was selling light fixtures on a commission. Defendant's bookkeeper, George B. Zaenglin, a witness for defendant, testified: "Q. Now, if Mr. McKelly was on a salary (after April 1, 1942), why did you carry on the bookkeeping under those arrangements? A. We waited until the auditor came to have all the books changed, and later on we would charge the Metco Products with any item that was charged to McKelly. Q. And when were the books changed, Mr. Zaenglin? A. In what way do you mean changed? Q. You said you were waiting for the auditor— A. That would be July 1st (1942), when the new set of books was going to be started. Q. Prior to July 1st, were any books kept for the Metco Company at all? A. No, sir. Q. And the transactions that arose in connection with Metco operations, were they all carried on the Butler-Kohaus books? A. On Olive street at the Butler-Kohaus. Q. All entries were entered in these books? A. Yes. Q. Then after that, when the new books were set up out at the Metco Company, was there a different form of check used? A. Yes, sir. Q. Was there a separate bank account for the Metco operations as distinguished from the Butler-Kohaus operations? A. Yes, there was."

After the books of the new setup were opened in the name of Metco Products, Inc., the items of credit to plaintiff from April 1, to July 1, 1942, were transferred to the new books and was there designated as salary. Exhibit 6 was a journal entry, a new book entry, and was under date of September 30, 1942. Mr. Zaenglin was asked about plaintiff's account, as it appeared on the books of Butler-Kohaus—the old books. Then he was asked: "Q. Now, then, was there credit given to that account at a later date for the amount charged, at this $60 a week rate? A. It was. Q. When was that credit given? A. On September 30th (1942)—just a second now. It says September 30th account of the Metco payroll $720 (to plaintiff). Q. September 30th, account Metco payroll $720; now, what was that— what do you mean by account Metco payroll? A. That was to be transferred from the Butler-Kohaus to the Metco Products. Q. In other words, that was to represent the work that was done for Metco which was advanced by Butler-Kohaus and Butler-Kohaus was being reimbursed there for that advance during that three months period? A. That's correct. Q. That would be April, May and June. And at

the end of June, July 1st, the Metco books were opened up there?
A. Started the books on the 1st or after."

The objection made to exhibit 6 was: "Mr. Kohn (then counsel for plaintiff): I object to that, if the court please, unless the plaintiff had anything to do with that, it wouldn't be binding upon him; it's self-serving on the part of the defendant company and it 'couldn't possibly bind the plaintiff, what things they wrote in their books in September, 1942."

In the brief defendant says: "Until the books of Metco Products, Inc., war products division, were opened and a bank account was opened and checks were obtained (which was July 1, 1942), plaintiff continued to be paid by checks of Butler-Kohaus, Inc., drawn on its separate bank account. . . . On September 30th, the account between the two divisions of the company was settled and contemporaneously therewith the entries in the journal, defendant's Exhibit 6, were made. . . . Plaintiff seems to confuse the date of the settlement between the two divisions of the company with the dates when the materials and services were furnished by Butler-Kohaus. The transaction recorded on September 30th represented the former and not the latter. The transaction entered in the books on September 30th was not a record, among other things, that plaintiff's services were furnished during the months of April, May and June, but, instead, it was a record that on September 30th the Butler-Kohaus division was being reimbursed as of that date for such services."

The adjustment of accounts between Butler-Kohaus and Metco Products was not of consequence to plaintiff. Plaintiff's complaint on exhibit 6 is that it designates the money paid to him for April, May and June, 1942, as *salary*, while on the old books of Butler-Kohaus, this same money was designated as commission.

Book entries not made contemporaneously, or nearly so, with the transaction recorded are not a part of the res gestae and are not admissible. Finnell v. Kellogg et al., 194 Mo. App. 342, 186 S. W. 1169. As appears, supra, defendant contends, in effect, that exhibit 6 was in the nature of a contemporaneous entry, and as supporting the competency of exhibit 6, defendant cites Dameron v. Harris, 281 Mo. 247, 219 S. W. 954; Anchor Milling Co. v. Walsh, 108 Mo. 277, 18 S. W. 904; Milne et al. v. Chicago, Rock Island & Pac. Ry. Co., 155 Mo. App. 465, 135 S. W. 85; Fulkerson v. Long, 63 Mo. App. 268, 271; Seligman et al. v. Rogers, 113 Mo. 642, 21 S. W. 94.

While the complained of exhibit 6 may not have measured up to an original book entry, plaintiff did not make that objection to it. His objection was that it was self-serving. Competency of evidence will generally be determined by the objection made. Edwards v. Metropolitan Life Ins. Co. (Mo. App.), 137 S. W. (2d) 591, l. c. 594, and cases there cited. Exhibit 6 was self-serving, but at most, it was only cumulative to a wealth of evidence that plaintiff was on a salary

when the contracts were obtained. The issue on salary or commission was clearly presented, and in view of Mr. Zaenglin's explanation as to exhibit 6, we do not think that plaintiff was prejudiced by the admission of exhibit 6.

Defendant's instruction No. 3 directed a verdict for defendant if the jury found that "an agreement was entered into between plaintiff and defendant by the terms of which, after April 1, 1942, he was to be paid a salary . . ." The point made is that the instruction has no support in the evidence. It is sufficient to say that this instruction is supported by the evidence.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.