**S & H CONCRETE CONSTRUCTION COMPANY, Inc., Plaintiff-Respondent,**

v.

**Jack GENOVA and Ewing Investments, Inc., Defendants-Appellants.**

No. 24078.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1964.

Irving Achtenberg, Kansas City, for appellants.

John G. Crichton and Ben W. Morse, North Kansas City, for respondent.

CROSS, Judge.

Plaintiff is a corporation engaged in the performance of various construction services. Defendant Ewing Investments, Inc. is a business corporation and the owner of the Carpenter Building, a six story brick structure, at 318 East 7th Street, in Kansas City, Missouri. Defendant Jack Genova is an officer and stockholder of defendant corporation.

Plaintiff prosecutes this action to recover for construction services rendered under an oral agreement. Trial to the court resulted in a judgment for plaintiff against both defendants in the sum of $1,998.01, with interest, and against defendant corporation on its counterclaims for damages. Defendants have appealed.

On October 27, 1961, plaintiff corporation, represented by its officer and agent, Bennie Sole, entered into an oral agreement with defendant corporation, negotiated on its behalf by defendant Genova, providing that the former would make certain repairs and improvements upon the latter's Carpenter Building. Under the agreement plaintiff was obligated to install new window sills, calk around the windows, clean the masonry, patch deteriorated concrete, point the mortar, and then apply waterproofing to the entire surface of the building. For these services it was agreed that plaintiff was to be paid the cost of its labor and material expended and $25.00 for each day of work. Plaintiff claims that the agreement also provided that it was to receive an additional sum, as payment for "overhead expenses", equal to 8% of the total cost of material and labor. This claim is disputed by defendants' pleadings and evidence. Also in dispute is a contention by defendants that the agreement obligated plaintiff to furnish continuous personal supervision of the job by its president, Bennie Sole. It is not disputed that the oral contract was terminable at any time at the will of either party.

Plaintiff began work under the agreement and continued working for 19 working days through a period of five weeks. Sole did not give full time personal supervision. Instead a foreman was hired and placed in charge of the work. Defendant Genova was present "on the job" every day during this time observing the work on behalf of defendant corporation. Soon after work started Genova began to complain that the men were not doing the amount of work they should and were not putting in full time. He informed Sole that they got on the job late and would regularly leave the job and go home at 2:00 or 2:30 o'clock and that they were drinking on the job. Genova also complained about the quality of the work. Pursuant to Genova's complaints, Sole replaced almost the entire working crew at least four times. Genova continued to express dissatisfaction with the amount

and quality of work done. Finally, on December 15, 1961, he terminated the agreement and directed plaintiff to remove its men and equipment from the premises.

On behalf of plaintiff, Sole produced time cards and pay checks which were received as evidence of wages paid for labor on the job totalling $1,576.08. Sole testified to expenditures for materials used in the total amount of $314.92 and "miscellaneous" job expense items amounting to $281.93. Giving credit for "reusable tools" in the sum of $22.00, Sole claimed on behalf of plaintiff the sum of $2,150.00 as the "net total paid out", $172.08 as "overhead expense" at 8% and 10 days "profit" at $25.00 per day amounting to $475.00—a grand total of $2,798.01. Giving defendant credit for $800.00 it had previously paid, Sole testified plaintiff's net entitlement was $1,998.01.

Defendant Genova testified to the effect that the men on the job did not put in working the time for which they were paid and that their work was not of workmanlike quality. It was Genova's testimony that he was "there" every day from 8:00 to 4:30. He stated that the workmen didn't show up before 8:15 or 8:30 in the morning and then "every time I looked up at 2:30 or 3:00 o'clock well, they was on their way home * * * I never seen any of them work after 3:00 o'clock". He reported this to Sole.

In support of corporate defendant's counterclaim for damages there is evidence that plaintiff's workmen had dumped quantities of mortar on the roof of the building and allowed it to harden, resulting in the necessity of its removal and repair of the roof; that they had damaged the flashing with their shoes and caused leaks in the roof; that the awnings of the building were permitted to blow off the building and damaged so as to be useless; that there was damage to cars on the ground and to nearby buildings caused by cement dropped by plaintiffs' laborers; that the wall surfaces to which plaintiff applied waterproofing were discolored, showed spots and had flaked off in places; and, that it was necessary to redo some of the work—all to corporate defendant's damage in the approximate sum of $1,000.00.

The first appeal assignment charges the court with error in rendering judgment against defendant Genova because there was no evidence that he was a party to the contract. We are in agreement with the contention. There is no evidence whatsoever in the record to show, or from which legitimate inference could arise, that Genova jointly contracted with defendant corporation or that he guaranteed its obligation. Nor is our attention directed by plaintiff to any such evidence. Plaintiff argues for the first time in its brief, filed after oral argument, that defendant Genova contracted as an agent with an undisclosed principal or that he intended to impose personal liability on himself as a guarantor. There is no basis for this claim. All the evidence, including the admissions of witness Sole who negotiated the contract on behalf of plaintiff, indicates that Genova was acting only on behalf of defendant corporation. Sole testified that he had previously done work for Ewing Investments, Inc., when Genova was acting as its agent and had received the corporation's check in payment; also, that the partial payment of $800.00 in this case was paid by a check issued by Ewing Investments, Inc. Knowing these facts, Sole will not be heard to say that defendant corporation was an undisclosed principal. This theory was not pleaded by plaintiff or developed in the trial.

Consequently we rule that the judgment against defendant Genova is without evidentiary support and that the court erred in rendering it. See Hunt v. Sanders, 313 Mo. 169, 281 S.W. 422. Plaintiff suggests in its brief that if this court should decide there is no personal liability against Genova, we have authority to correct the judgment and enter it as against the defendant corporation only. We would follow that course of action if the trial had been otherwise free from error. As will be developed

herein, the trial court has committed additional error so materially prejudicing defendants' rights as to require retrial of the cause.

▮▮▮ The trial court also erred in permitting plaintiff to recover the cost of tools which it purchased and charged to the contract under the heading of "materials furnished and paid". It was admitted by witness Sole that there was no discussion relative to a charge for tools during contract negotiations and that "the only thing I'd say discussion was that he would pay for materials". It is the established rule that where contracting parties are operating under a "cost plus contract", unless there is an agreement obligating the recipient of the work to pay for tools and equipment, such charges are not proper since it is the duty of the contractor to "furnish all the tools and necessary appliances for the work contracted to be done." Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824. The error is of substance and prejudicially affects the merits of the action.

The trial court further erred by refusing to allow defendant Genova to read from a record of the work done by plaintiff. This memorandum or "job diary" showing the hours that each of the men worked on the job was made by Genova himself, contemporaneously with the work that was done, and in the course of his constant personal observation of the job from day to day during the entire time any work was performed. The memorandum was in Genova's own handwriting, consisted of four pages, and recorded in detail the working time of each man for each of the 19 working days. Genova testified, "I was on the job from 7:00 till quittin' time, 4:30 every day. Each day I made my daily report on, on each sheet". In the course of Genova's direct examination defendants' counsel handed him the described memorandum and interrogated him as follows: "I will ask you if you can testify, refreshing your memory from such memorandum, day by day, what hours were worked on this job, if you will—". Refer-

ring to the "job diary" he had kept, Genova proceeded to testify as follows:

"A. On November the 6th no work was performed, two common laborers on the scaffold and carried sand. Mr. Sole and his partners showed up at, after lunch with the scaffold and they left. That was the day's work. On November the 7th two finishers, one common laborer start working at 10:15, stop working at 3:45. No work was performed or scratching the wall or fill patches. They did not order—"

At this juncture the witness was interrupted by the court, as here shown:

"BY THE COURT: Now, wait a minute. We like to be liberal but we can't sit here and let this man read a document that he has prepared and has been identified that he has used for refreshing his memory. Now, that's contrary to all principles of evidentiary procedure. Now, he is here, present in person. He can testify in answer to questions but we're not going to sit here and let him read an epistle pages long which is contrary to concepts of law. Now, if you need a little time to get him straightened out—

"BY MR. ACHTENBERG: Well, if the Court please, these were records made at the time.

"BY THE COURT: Now, if you please, sir, I don't want any argument. Now, we know what the fundamental laws are and I'm not going to sit here and listen—you wouldn't even let a doctor read his notes. He can refer to them to testify. But no witness, if you do that just as well dispense with witnesses and come up with some self-serving statements".

From the foregoing excerpt of the record it is seen that the trial court, of its own volition and without objection by plaintiff, denied Genova any *effective* use of the record he had kept. In the very nature of things the witness could not be expected to

have independent recollection of the myriad details contained in a complete record of the work of eleven men, covering nineteen days extending through a period of five weeks. Therefore, notwithstanding the trial court's statement that Genova could refer to the memorandum, the nature of the information defendants desired to translate from the writing as probative evidence was of such a detailed character that the only possible way he could "refer" to it and testify would be for him to read from it.

■ It is a generally recognized rule of evidence that a witness may testify to a transaction or event on the basis of a written record of his past recollection, although the writing does not refresh his memory and he has no present recollection of the matters there recorded.[1] 98 C.J.S. Witnesses § 358c, p. 88. The rationale of this rule is stated by the Supreme Court in State v. Patton, 255 Mo. 245, 164 S.W. 223, as follows: "* * * (T)he witness speaks from a record made by him, or from one which, when it was made, he knew to be a true and correct recital of the facts, but of which, when he testified, he had no independent present recollection, and regarding which he remembers only that, when the record shown him was made, it was correct. In effect, in lieu of his own testimony, he introduces a witness, and merely vouches for that witness' veracity. In such case the paper, writing, or instrument so identified—that is, the witness vouched for—is itself competent as evidence, and may be offered. State v. Brady, 100 Iowa 191, 69 N.W. 290, 36 L.R.A. 693, 62 Am.St.Rep. 560; Moots v. State, 21 Ohio St. 653".

■ In Mueller v. Rock, Mo.App., 249 S.W. 435, an action to recover for work performed, the trial court refused to permit the plaintiff to refresh his memory from his time records as to the number of hours worked. Such action by the trial court was held to be reversibly erroneous since "it touched the very life of plaintiff's rights in the case".[2] Likewise in this case the trial court's error, the effect of which is to exclude from consideration the probative facts contained in Genova's work record, is so destructive of defendants' legal rights that it must be considered reversible in its nature.

In addition to the points raising the issues hereinabove discussed and ruled, defendants' brief contains six further assignments of error. Since the questions therein presented may not arise again upon a retrial of the case, we deem it unnecessary to determine them.

Because of the above noted prejudicial errors committed in the trial of this action, the judgment is reversed and the cause is remanded for a new trial consistent with this opinion.

All concur.

■

---

1. See Annotation—Refreshment of recollection by use of memoranda or other writing. 82 A.L.R.2d, p. 473, 604.

2. Also see State v. Bradley, 361 Mo. 267, 234 S.W.2d 556; Smith v. Bergmann, Mo.App., 377 S.W.2d 519; Ward v. D. A. Morr Transfer & Storage Co., 119 Mo.App. 83, 95 S.W. 964; King v. Furry et al., Mo.App., 317 S.W.2d 690; Ahern v. Boyce, 26 Mo.App. 558.