NEGLEY B. CALVIN, INC., a Corporation, Plaintiff-Respondent,

v.

James V. CORNET, Defendant-Appellant.

No. 32787.

St. Louis Court of Appeals.

Missouri.

March 19, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied April 19, 1968.

Ludwig Mayer, Clayton, for defendant-appellant.

Love & Mann, Joe Bill Carter, Clayton, for plaintiff-respondent.

DOERNER, Commissioner.

Defendant appeals from a judgment rendered in favor of plaintiff for $1899 on plaintiff's claim, and in favor of plaintiff and against defendant on defendant's counterclaim, in a suit growing out of an oral construction contract.

Plaintiff Negley B. Calvin, Inc., apparently a one-man corporation, was engaged in the business of laying drain or sewer pipe. Defendant James V. Cornet was a land developer and building contractor. Pursuant to an oral contract plaintiff installed sanitary and storm sewers and performed certain related work for defendant in a subdivision named Saxon Manor which defendant developed in St. Louis County. Essentially there were only two contested issues in the case, the first of which concerned the terms of their oral contract. Plaintiff's evidence was that he first offered to perform the work on a cost plus 10% plus 10% basis; that defendant objected to those terms; that he then offered to do the work for cost plus 10% plus 5%; and that defendant accepted that proposal and directed him to start immediately. Plaintiff's evidence showed that the 10% was for profit and the 5% for his overhead. Defendant's evidence was that under the agreement reached payment was to be made on a unit price basis for the work performed, and that the unit prices were to be those contained in two written contracts previously entered into between the parties, one for similar work performed by plaintiff at defendant's Out Post Estates subdivision and the other for work at defendant's Cricklewood subdivision. The issue as to the terms of the oral contract was submitted to the jury, which obviously decided it in favor of plaintiff. No point

regarding that feature of the case is raised in defendant's brief.

The second dispute between the parties concerned the amount, if any, which remained due plaintiff after the admitted receipt by it of certain payments on account concededly made by defendant. Under its version of the terms of the oral contract plaintiff maintained (after reducing its demand during the course of the trial) that defendant owed it $1899. Under his version of the terms of the oral contract defendant asserted that computed on the unit price basis the total amount to which plaintiff was entitled for the work performed in Saxon Manor was either $5735.43 or $5579.53, the variation being due to slight differences in the unit prices in the written contracts for the Out Post Estates and Cricklewood jobs; that he had theretofore paid plaintiff a total of $7825.08; and that he had therefore overpaid plaintiff in the amount of $2089.66, for which he counterclaimed. From the verdict it is likewise clear that the jury decided this issue in favor of plaintiff.

Defendant devotes all of its 94 page brief to the second issue in the case. In its points relied on, under Roman numeral I, in two paragraphs designated as (a) and (b), it is asserted that the verdict in the sum of $1899 is not supported by the evidence, is contrary to plaintiff's evidence, and is based on speculation and conjecture. Each of such paragraphs contains various subparagraphs, but neither in the paragraphs nor in the subparagraphs is any statement made as to what action or ruling of the court defendant claims was erroneous, or any reason advanced as to why he contends the court was wrong in any action or ruling sought to be reviewed. Lacking such particularization point I fails to comply with Civil Rule 83.05(a) and (e), V.A.M.R., and presents nothing for appellate review. State v. Rapp, Mo., 412 S.W.2d 120; Martin v. O'Connor, Mo., 406 S.W.2d 41; Ambrose v. M.F.A. Co-Operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647; Rose v. Rose, Mo.App., 401 S.W.2d 946; State ex rel. State Highway Commission v. Harrison, Mo.App., 311 S.W.2d 104.

Defendant next maintains that the court erred in admitting in evidence over its objection plaintiff's exhibits 10 to 15, inclusive. Each of such exhibits consisted of several printed forms, the first of which was referred to as a summary sheet, and the remainder as daily reports. The daily reports were prepared each day by plaintiff's foreman, on which he recorded the name of each man who worked that day, the number of hours worked by each, a list of all equipment used, the number of hours each was employed, the nature of the work performed, and similar information. The daily reports were delivered to Calvin and at the end of each work week or similar period he prepared, in triplicate, the remaining sheet of each exhibit, which he described as a summary sheet. In addition to the names and number of hours worked by each employee each day and the total for the week, the summary sheet also showed his hourly rate, total wages earned, deduction for social security, and net amount paid each workman; the total of such labor costs for the week; the amount paid for insurance to cover the workmen; the pieces of equipment used, the hours each worked each day, the total hours for the week, the hourly rate charged, the total amount charged for each piece of equipment, and the total for all for the period covered. The uncontradicted testimony was that one copy was retained in plaintiff's files for its records, one kept by Calvin, and the third delivered to defendant, who never voiced any objection or protest concerning them. In fact, defendant introduced as his exhibits a number of the copies sent him. The objection made by defendant to the admission of such exhibits was that they were self-serving records prepared by plaintiff and not original records of its costs. We find no error in the court's ruling. The evidence clearly established that the exhibits were

original records, in the nature of a book of account regularly kept in the course of plaintiff's business, and that the entries thereon were made contemporaneously with the events and transactions represented. Accordingly, they were not subject to exclusion as self-serving, and were admissible under the principle of res gestae as are books of account. McKelly v. Metco Products, 354 Mo. 993, 193 S.W.2d 28; Roland v. Gassman, Mo.App., 44 S.W.2d 658; Welch-Sandler Cement Co. v. Mullins, Mo.App., 31 S.W.2d 86. Indeed, so far as the evidence shows they were the only book of account kept by plaintiff.

As stated, one item which went to make up plaintiff's claim was the hourly charge made for each piece of equipment used in the prosecution of the work. For example, plaintiff included as part of its cost of doing the job a flat charge of $7.00 for each hour it used a back hoe owned by it. Defendant maintains that the plaintiff is not entitled to include any charge for the use of such equipment as part of its cost of performing the work, citing Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824 and S & H Concrete Construction Co. v. Genova, Mo.App., 384 S.W.2d 816. In the Taetz case, where the written contract provided that the contractor was to be paid for, "* * * all labor incorporated in the work * * *" plus a percentage of 10% for profit and another of 4% for overhead, the contractor added to each hour paid his plumbing foreman 20¢ above his hourly rate of pay, to the second plumber 15¢ above his hourly rate, and 10¢ above the hourly rate paid the third plumber. According to the opinion, these amounts were not paid to the employees and were retained by the contractor for the use of trucks that were equipped with large tools and other equipment used to do heavy plumbing. As the court pointed out, there was nothing in the construction contract that provided for such charges, and quoting from Shaw v. G. B. Beaumont Co., 88 N.J.Eq. 333, 102 A. 151, 153, 2 A.L.R. 122, it stated (253

S.W.2d 829, 830): "* * * These trucks were a part of the equipment of the contractor, and in the absence of an agreement to pay for the same these charges are not proper as it is the duty of the contractor to 'furnish all the tools and necessary appliances for the work contracted to be done.' * * *" In the S & H Concrete Construction case, supra, the contract provided that the contractor was to rehabilitate a building in certain respects and was to paid, "* * * the cost of its labor and material expended and $25.00 for each day of work. * * *" The contractor attempted to include in such costs an expense for tools purchased, under the heading of "* * * 'materials furnished and paid.' * * *" In disallowing such charges the court there stated (384 S.W.2d 819): "* * * It is the established rule that where contracting parties are operating under a 'cost plus contract,' unless there is an agreement obligating the recipient of the work to pay for tools and equipment, such charges are not proper since it is the duty of the contractor to 'furnish all the tools and necessary appliances for the work contracted to be done.' Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824. * * *"

Shaw v. G. B. Beaumont Co., 88 N.J.Eq. 333, 102 A. 151, cited in the Taetz case, involved a long and complicated account between a land owner and a contractor growing out of a contract for the construction of an apartment house, under which the contractor was to be paid the cost of the building plus 10% but not to exceed $42,000. The master to whom the case was referred for an accounting disallowed the contractor's claim for tools, such as ladders, mortar tubs, etc., used in the construction of the building, but whether the amount claimed by the contractor was for their purchase price or an amount for their use does not appear. In affirming the disallowance the New Jersey Court of Errors and Appeals stated (102 A. 153): "* * * So the tools used in the construction of the building, they were a part of

the equipment of the contractor; a contractor, when he agrees to build, must, in the absence of a contrary agreement, furnish all the tools and necessary appliances for the work contracted to be done."

Defendant construes these cases to hold that under a cost plus a percentage of cost contract the contractor may not include, as part of his cost of performing the work contracted for, *any* amount for the use of his machinery and equipment which he utilizes in the performance of such work. We do not so construe those decisions. As we read those cases, while the courts held that the contractor must furnish such tools, machinery and equipment, the courts did not say that he must do so at his own expense and without any reimbursement for his actual cost for their use. Of course, he may not make an arbitrary hourly charge for the use of such machinery in determining the cost of performing the work contracted for, as was attempted in Taetz; nor may he include as part of such cost the purchase price of the machinery and equipment used, as was sought to be done in the S & H Concrete Construction case.

■ If those cases hold that the contractor may not include his actual expense of using his machinery and equipment in arriving at the cost of performing the work contracted for, as defendant construes them, they are contrary to the weight of authority. Crone v. Amado, 69 Ariz. 389, 214 P.2d 518; Citizens State Bank of Long Beach v. Gentry, 20 Cal.App.2d 415, 67 P.2d 364; House v. Fissell, 118 Md. 160, 51 A.2d 669; Johnson v. Kusminsky, 287 Pa. 425, 135 A. 220; 17A C.J.S. Contracts § 367(2), p. 377. The instant case amply illustrates the inequity which would result if the rule was as contended for by defendant. According to the computation made by defendant's engineer, introduced as one of defendant's exhibits, the work specified and concededly performed by plaintiff included the trenching for and the laying of hundreds of feet of pipe for the sanitary and storm sewers. Under the contention made by defendant, if the plaintiff had employed additional laborers to dig and backfill the required ditches plaintiff would be entitled to include the wages paid such additional laborers as part of the cost of performing the work; but because plaintiff purchased costly machinery (one piece of equipment cost about $40,000) and used such labor-saving devices to perform precisely the same work as the additional laborers would have performed, (probably at a lower cost), plaintiff is not entitled to include his actual expense of using such machinery and equipment in arriving at the cost of doing such work.

■ Furthermore, even if the rule is as contended for by defendant there is sound reason why it should not be applied in this case. The evidence showed that before the oral agreement was made for the installation of the sewers at Saxon Manor defendant employed plaintiff to dig a trench, by means of a back hoe, in which defendant's plumbing contractor was to lay the water line, and agreed to and did pay plaintiff $12.50 per hour for the use of the machine and the services of its operator. Defendant, as well as his superintendent, was present on the job while plaintiff was trenching for the sanitary and storm sewers and must have observed plaintiff's use of its machinery and equipment for such purposes. Also, the machines and equipment used, the number of hours each was worked each day, the total number of hours employed for the week, the hourly charge made, and the total for the use of each machine was set forth on the summary sheets of plaintiff's exhibits 8 to 15 inclusive, duplicate copies of which were periodically sent to defendant. Defendant never objected to the use of the machinery and equipment or to the hourly charges made therefor, until this litigation arose, and in fact paid the total amount shown to be due on exhibits 8, 9 and 10, which included the hourly charges for plaintiff's machinery and equipment. It was recognized in Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824, 829, that charges for the use of the contractor's machinery and equipment could be included

as part of the cost of the work if the agreement so provided. The agreement here was that plaintiff was to be paid for the "cost" of the work contracted for (whereas in Taetz he was to receive, "* * * the amount paid out * * * for all labor incorporated in the work * * *"). What was or was not to be included as part of the "cost" of the work was not discussed, and that word is by no means definite and certain. In Landau v. Laughren, Mo., 357 S.W.2d 74, 80, it was said: "* * * It is well established that in construing an ambiguous or disputed contract the interpretation the parties placed on it by their conduct is of great weight in determining what the agreement actually was. (Citing many Missouri cases.) Where a party by his performance construes the contract in a manner that is against his interest, his actions are generally considered conclusive against him. Leggett v. Missouri State Life Ins. Co., Mo., 342 S.W.2d 833, 852 [16]." Defendant's course of conduct over an extensive period of time in paying for the hourly rate charged by plaintiff for the use of its machinery and equipment, and in receiving other bills therefore without protest or objection, demonstrates that he interpreted the word "cost" as including such charges. We hold that the parties agreed that such charges were to be included in determining the cost of the work contracted for.

■ As stated, plaintiff made a flat hourly charge for the use of each piece of its machinery and equipment. When Calvin on direct examination attempted to explain such hourly charges there were numerous objections made, questions propounded and withdrawn, and other fencing between counsel, culminating in the following, quoted in defendant's brief:

"Q. (By Mr. Carter): Mr. Calvin, are all of these charges made for rental equipment, made for labor, the actual time these people were paid for, were all these charges the normal and usual charges in the industry?

"MR. MAYER: Again, this calls for a conclusion on the part of the witness. There is no evidence here as to what the industry does.

"MR. CARTER: I think it is a question whether it is normal or reasonable, I think, is an issue.

"THE COURT: What I will do is overrule the objection, permit you to proceed, if it will save us about four hours time in this particular examination, because it appears we have been bogged down. We are still on direct examination of this witness since ten o'clock this morning. Proceed.

"Q. Will you answer that question, Mr. Calvin?

"A. May I hear it again?

"Q. Were all of these charges you have shown on Exhibit 8 through 15, for your labor time you people spent for the equipment rental time, are all these charges reasonable in relation to the charges made in the industry for such labor and equipment?

"A. They are."

Defendant now asserts that the court erred in overruling his objection because plaintiff sued on an express contract, not on quantum meruit, and that the reasonableness of plaintiff's charges was not an issue in the case. That, however, was not the grounds of the objection made by defendant, as the foregoing excerpt shows. The only ground stated below was that the question called for a conclusion on the part of the witness. An objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else on appeal the trial court will not be convicted of error for overruling it. Mitchell v. Robinson, Mo., 360 S.W.2d 673; Hall v. Clark, Mo., 298 S.W.2d 344; Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535. Defendant may not interpose one objection below and another on appeal.

In its petition plaintiff alleged that defendant had employed it to do certain work and furnish certain materials, all as itemized in its attached Exhibit "A." In his answer defendant denied these allegations but in his counterclaim pleaded that he had employed plaintiff to construct sewer lines, manholes, inlets and related facilities and that plaintiff substantially completed such work on or about April 28, 1964. Towards the beginning of Calvin's direct testimony he was asked to refresh his memory by plaintiff's exhibits 9 through 15 and relate how the work progressed and what happened and what actually had to be done. Defendant objected on the ground that such testimony was immaterial and irrelevant to any issue in the case. The court remarked that since cost-plus was plaintiff's theory, "* * * We would have to know what they did. * * *" Defendant now claims that the evidence was immaterial and irrelevant because in its counterclaim it had admitted, "* * * that plaintiff had been employed to do the work alleged in the petition * * *." Defendant made no such admission, either in his answer or in his counterclaim. In fact, in his answer he specifically denied the allegations in plaintiff's petition, and in his counterclaim he pleaded his own version of the work to be done. In any event, we agree with the trial court that plaintiff was entitled to prove its performance of the work called for under the cost plus a percentage of cost contract, in accordance with the plan prepared by defendant's engineer.

It is also urged by defendant that the verdict of the jury was the result of bias and prejudice created against defendant because of the many objections he was required to make to exclude incompetent, irrelevant and immaterial testimony offered by plaintiff. Statistics as to the number of objections made and the court's rulings thereon are cited but no reference is made to any particular questions or settled course of conduct on the part of plaintiff's counsel which it is claimed were inflammatory or prejudicial, and no objection or motion for a mistrial on such a ground was made during the trial. Because trial courts have such an obvious advantage for the determination of the effect on the jury as to bias, prejudice and passion, appellate courts usually leave such matters to their discretion and defer to their judgment, unless an abuse of discretion is shown. Hancock v. Kansas City Terminal Ry. Co., 347 Mo. 166, 146 S.W.2d 627; Weekley v. Wallace, Mo.App., 314 S.W.2d 256. We find no abuse of discretion in the court's ruling in the instant case.

Defendant's final point is that the court erred in failing to sustain his motion for a directed verdict on his counterclaim, made at the close of all the evidence, because the plaintiff had failed to file a reply to defendant's counterclaim. In the first place, no reference to plaintiff's failure to file a reply was made in defendant's motion for a directed verdict, nor was one made in defendant's motion for a new trial. In the second, defendant raised no objection to plaintiff's failure to file a reply, never moved for a default judgment or for judgment on the pleadings before trial, tried the case as though a reply had been filed, and submitted the issue of his claimed overpayment to the jury. There is abundant authority that by such conduct defendant waived the filing of a reply to his counterclaim and that the case should be treated as one in which a reply was filed. Barton v. Pauly, Mo., 350 S.W.2d 748; Pleiman v. Belew, 360 Mo. 219, 227 S.W.2d 733.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

ANDERSON, P. J., WOLFE, J., GEORGE W. CLOYD, Special Judge, concur.