STATE of Missouri, ex rel. Linda ANDERSON by Sylvalene BURKE, Next Friend, and Sylvalene Burke, Plaintiffs–Respondents,

v.

David J. SUTTON, Defendant–Appellant.

No. 16754.

Missouri Court of Appeals, Southern District, Division Two.

April 9, 1991.

J. Max Price, Joseph W. Rigler, Salem and Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla, for defendant-appellant.

Edward D. Hoertel, Anne Wickliffe Freeman, Rolla and Sidney T. Pearson, II, St. James, for plaintiffs-respondents.

FLANIGAN, Chief Judge.

This is an action under the Uniform Parentage Act, §§ 210.817 to 210.852,[1] RSMo (L.1987, S.B. 328), to determine the existence of the father and child relationship between David Sutton, defendant in the trial court and appellant here, and Linda F. Anderson, who was born January 10, 1983. Plaintiffs in the action, respondents here, are Sylvalene Burke (the mother) and Linda. The trial court, sitting without a jury, found the issues in favor of plaintiffs. Defendant appeals.

The trial court in its judgment found that defendant was the natural father of Linda and was capable of paying child support. Defendant was ordered to pay $100 per month for the support of Linda and to reimburse the state of Missouri the sum of $4,457 for funds paid to Sylvalene by the state under the Aid to Families With Dependent Children program.

Defendant's first point is that the evidence is insufficient to support the finding of paternity, and thus insufficient to support the judgment, "since the evidence established that defendant could not be the father of Linda because the parties did not have sexual intercourse during the time Linda was conceived."

An action filed under the Uniform Parentage Act is a civil action governed by the Rules of Civil Procedure. § 210.839. Appellate review of this court-tried case is governed by Rule 73.01(c), V.A.M.R. This court must give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

Section 210.822 sets forth certain factual situations, none present here, where a man is presumed to be the natural father of a child. Unless a presumption applies under § 210.822, the burden of proof as to all issues shall be preponderance of the evidence. § 210.839.4.

In support of his first point, defendant argues that Linda was born on January 10, 1983, that the normal human gestation period is 280 days, that Sylvalene testified that Linda was not "born premature," that Linda "was born full term plus 10 days," and "therefore, the date of conception of the child was March 27, 1982." Defendant points to his own testimony that he admitted having intercourse with Sylvalene on March 7, 1982, and to a portion of the testimony of Sylvalene where she stated that the first time she had intercourse with defendant was in June 1982.

Defendant's calculation of March 27 as the date of conception is based only on his view of selected portions of the evidence. Defendant's argument overlooks other evidence.

---

1. Unless otherwise indicated, all references to statutes are to RSMo Cum.Supp.1990, and all references to rules are to Missouri Rules of Court, V.A.M.R.

When Sylvalene mentioned that she had had intercourse with defendant in June 1982, she also testified that she was "having a little trouble remembering some of this.... It's been a while." In her interrogatory answers, received into evidence by agreement of the parties, Sylvalene testified that she engaged in intercourse with the defendant in April 1982 and May 1982.

Sylvalene testified that she had intercourse with defendant three or four times. She also testified, "I had no kind of get-together with any other male.... I had no intercourse with anyone else in March, April, May, June or July of 1982." Sylvalene also testified that after she found out she was pregnant, "I told [defendant] face to face." She then gave the following testimony:

Q. Why did you tell him rather than someone else?

A. Why did I tell him?

Q. Uh-huh.

A. Because he was the father of the child.

Q. And what made you believe that?

A. Because he was the only one I had been with.

Q. He's the only person you'd had intercourse with?

A. Yes.

Q. Had you had intercourse with anyone else in March of 1982?

A. No.

Based on tests of blood samples taken from Sylvalene, Linda and defendant, George Maha, a geneticist employed by Roche Biomedical Laboratories, testified: "The scientific evidence would indicate that [defendant] is 99.89 percent likely to be the father of the child.... I would feel it's practically proved that [defendant] is the father of Linda."

The evidence set forth above was sufficient to justify the trial court's finding of paternity. Defendant's first point has no merit.

Defendant's second point is that the trial court erred in admitting "the testimony of Dr. George Maha" and the report of Roche Biomedical Laboratories, Exhibit 3, because: (a) Exhibit 3 was not properly qualified as a business record, (b) the persons conducting the tests upon which Exhibit 3 was based were not present and did not testify, and (c) no chain of custody of the blood samples showing their unadulterated nature was proven.

■ "Prejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal in any case tried before the judge without a jury." *City of Town and Country v. St. Louis County,* 657 S.W.2d 598, 608[16] (Mo. banc 1983). In a case tried without a jury, the trial court may properly allow the parties "wide latitude" in the admission of evidence. *Mashak v. Poelker,* 367 S.W.2d 625, 626[2] (Mo. banc 1963). See also *Lee v. Rolla Speedway, Inc.,* 539 S.W.2d 627, 632[9] (Mo.App. 1976); "In a court tried case, the same strictness as to admission of evidence is not applied as is to jury cases." *In re Marriage of Ryterski,* 655 S.W.2d 102, 104[4] (Mo.App.1983). In any event, the challenged evidence was properly received.

■ Defendant's point is over-broad in challenging "the testimony" of Dr. Maha. His testimony consumes 64 pages of the transcript. Most of that testimony was received without objection and some of it was elicited by defendant's counsel. Actually, what defendant is challenging is the admissibility of Exhibit 3.

The trial court received Exhibit 3 into evidence at the conclusion of plaintiffs' direct examination of Dr. Maha. When Exhibit 3 was offered, defendant's counsel objected for the following reasons:

"There are a number of hearsay objections; the first one being that, of course, again, it is not prepared in the common course of business but instead is prepared for purposes of litigation. The testimony here has been that Dr. Maha did not perform any of these tests, he did not observe any of the tests being performed, and they were each performed by different unnamed, unknown technicians. We have no testimony before us today that the tests were actually, in fact, performed in a manner which is consistent and acceptable within the scientific community, and we have no knowledge of whether or not these tests

were accurate. All we have is the testimony concerning the business records indicating that there were nothing abnormal about them."

Debra McNew, a medical technologist, took blood samples of Sylvalene, Linda, and defendant in August 1988. She identified Exhibit 2 which contained the respective authorizations of Sylvalene and defendant. She testified that she obtained the·blood specimens, following all the instructions contained in the "kit" provided by the Roche Laboratory. She testified that all of the equipment she used "was sterile and in proper condition." Under cross-examination, she testified she did not "deviate in any way from the usual procedure" for drawing blood in paternity cases.

Exhibit 2 also contained a "chain of custody" section which was executed by witness McNew and later by personnel of the Roche Laboratory Paternity Department, to which McNew had mailed the samples. The latter entry showed that the box containing the blood specimens was taped, and that the tape was intact and initialed by Debra McNew and showed no signs of tampering. A paternity department employee attached her certificate which stated that she had received the specimen, "and there is no evidence that the package has been opened."

Exhibit 3, the challenged exhibit, contained the results of the blood tests and the conclusions of Dr. Maha. Exhibit 3 was verified by him.

Section 210.834.5 reads:

"Verified documentation of the chain of custody of the blood or tissue specimens is competent evidence to establish such chain of custody. A verified expert's report shall be admitted at trial as evidence of the blood test results stated therein unless a written motion challenging testing procedures or the results has been filed and served on each party at least twenty days before the trial, and the motion is sustained by the court."

At no time did defendant file or serve the written motion mentioned in § 210.834.5.

Dr. Maha testified, among other things, that the tests to which the blood samples were subjected were generally accepted in the scientific community and the field in which he practiced, that of testing for paternity. Under cross-examination, he said, "I do know of my own knowledge about the chain of custody. I can read our corporate records and establish that." He also testified that Exhibit 3 and Exhibit 2 were records "kept in the normal course of business," and that he was the custodian of those records as assistant director of Roche Laboratories.

Section 490.065.3 reads:

"The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable."

Defendant's failure to file the written motion required by § 210.834.5 is itself fatal to his challenge to Exhibit 3. Moreover, the record supports the conclusion that the data, including Exhibit 3, on which Dr. Maha relied, were "of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject," § 490.065.3, and was "otherwise reasonably reliable." *Id.* Exhibit 3 was properly admitted. Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in ordering him to reimburse the state the sum of $4,457, representing the amount the state of Missouri paid to Sylvalene under the Aid to Families With Dependent Children program, "because the evidence of necessaries was insufficient to support a judgment since the evidence presented did not show what amounts were expended, what amounts were necessary to the essential care of the child, or the reasonable value of any expenditures."

Sylvalene testified that Linda was born on January 10, 1983, in San Francisco. In the summer of 1984, Sylvalene and Linda moved to Missouri. Sylvalene received "AFDC checks" until Linda was 4. Defendant at no time furnished support for Linda or Sylvalene. The bill for the hospital-

**156**

ization involving Linda's birth was $4,000. By the time of the trial, held in 1989, Sylvalene had paid that bill out of her own income and reduced the balance to $495.

Sylvalene's gross income, as a nurse's aide, "runs around $300 or $400 every two weeks." Although Sylvalene has married, her husband is "unemployed due to health" and furnishes no income to the household. Every two weeks Sylvalene spends $60 or $70 for groceries for the household, which consists of Sylvalene, her husband, Linda, and a 15–month–old child of Sylvalene's marriage. Sylvalene's monthly bills include rent of $125, truck payment of $141, and utilities of around $225. Sylvalene testified, "I spend about $100 a month on the children for clothes." Her AFDC payments amounted to $224 a month.

Joyce Lenox, a child support enforcement technician employed by the state, identified Exhibit 4 as an assignment by which Sylvalene "assigned her right to support to the Division of Family Services." She also identified Exhibit 5 as "our 509 work sheet" showing assistance paid to Sylvalene by the state through the Division of Family Services. She testified that the state had paid Sylvalene $4,457 "for the support of Linda." Both Exhibit 4 and Exhibit 5 were received into evidence and, on this appeal, defendant has made no claim that either was inadmissible.

Since Linda's birth, Sylvalene has been the sole source of Linda's support. The evidence concerning the hospital bill and expenditures made by Sylvalene for the maintenance of the household of which Linda was a member, together with the evidence showing expenditures for Linda's clothing, are more than ample to support the conclusion that the amounts expended for Linda's necessaries substantially exceeded the amount of $4,457 which the court ordered defendant to pay the state. Defendant's third point has no merit.

The judgment is affirmed.

HOGAN and SHRUM, JJ., concur.